**Teresa L. LATHER, Administratrix of the Estate of Robert J. Lather, II, Deceased, Appellant (Plaintiff),**

**v.**

**Joseph A. BERG, and Ronald J. Bailey, Appellees (Defendants).**

No. 2–285–A–56.

Court of Appeals of Indiana, Second District.

March 3, 1988.

**756**

Lloyd H. Milliken, Jr., Mark J. Roberts, Burton M. Harris, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellant Teresa L. Lather.

James R. Fisher, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee, Joseph A. Berg.

J. Conrad Maugans, Bayliff, Harrigan, Cord and Maugans, P.C., Kokomo, for appellee, Ronald J. Bailey.

BUCHANAN, Judge.

## CASE SUMMARY

Plaintiff-appellant Teresa Lather [hereinafter referred to as Administratrix], as administratrix of the estate of her husband, Indiana State Police Officer Robert J. Lather (Robert), appeals a summary judgment entered in favor of defendants-appellees Joseph Berg (Berg) and Ronald Joseph Bailey (Bailey), claiming that genuine issues of material fact exist as to whether Berg or Bailey furnished alcohol or marijuana to Keith Murphy (Murphy), a minor, whether Berg and Bailey negligently entrusted Murphy's own car to him, whether Berg or Bailey negligently performed a gratuitously assumed duty, and whether Berg negligently forced Murphy to leave Berg's premises knowing Murphy would drive while intoxicated.

We affirm.

## FACTS

This being an appeal from a summary judgment, we view the facts in a manner most favorable to the non-moving party, the Administratrix.

In the early morning hours of July 6, 1982, Murphy left a party at Berg's home in a drunken rage. He drove through Kokomo at speeds in excess of one hundred miles per hour until he crashed into Robert's patrol car. Robert died of his injuries.

Murphy, Berg, Bailey, and Christina Weitzel (Christina), Murphy's girlfriend, had been drinking together at Berg's home since approximately 10:00 p.m. on July 5. All four were seventeen years old. The gathering began in the early afternoon with a swim in a creek near the home of Bailey's brother. Bailey had consumed approximately one half pint of whiskey from a partially depleted half gallon bottle by the time the others arrived. After a swim, Berg and Bailey invited Murphy to go to Berg's house and drink with them. Murphy agreed. The three devised a plan to ask Daryl Habel (Habel), Berg's uncle, to buy liquor for them. Bailey loaned Murphy twenty dollars so that Murphy could

pay for the liquor without having to drive across town to cash a check. Murphy drove Berg and Christina to Habel's home where Berg asked Habel, an adult, to buy the liquor for them, which he agreed to do. Murphy then drove Habel and the others to a liquor store where Habel used the twenty dollars to purchase a fifth of Seagram's Seven for Berg, Bailey, and Murphy, and a six-pack of Malt Duck for Christina (Habel is not a party to this appeal).

After the purchase of the alcohol, Murphy returned Habel to his abode and drove the others to Berg's house without stopping to cash a check. When they arrived, Bailey was waiting at the house with the remnant of his half gallon bottle of whiskey. Berg poured Murphy's first drink; thereafter, Murphy poured his own drinks or drank straight from the Seagram's bottle. For the most part, Berg and Murphy shared the Seagram's, and Bailey drank the whiskey from his half gallon bottle. By the end of the evening, both bottles were empty. Murphy, Berg, and Bailey also smoked marijuana, supplied either by Berg or by Bailey.

Shortly before Murphy's 11:00 p.m. curfew, Murphy announced his intention to drive home and asked Christina to go with him. She refused. Christina had ridden with Murphy many times in the months they had been dating and she knew him to be a poor driver when sober and a dangerous one when drunk. She observed that he was stumbling and that his speech was slurred and concluded that he was too drunk to drive. When Murphy called his mother on the telephone to explain that he would be late, Christina shouted into the telephone that Murphy was drunk. Murphy shoved her away and hung up the telephone without telling his mother where he was. The two began to argue; Christina trying to persuade Murphy to stay, and Murphy trying to persuade Christina to leave with him. Murphy continued to drink. Once, Christina got up to leave with him, but she became angry when he refused to let her drink in the car and she threw her drink in his face. Murphy then drove down the alley, but returned for her.

The argument continued outside, now including Berg and Bailey. Murphy became angry with Berg and threw his car keys on the grass. Christina picked them up. Murphy grabbed her arm and twisted it to get the keys out of her hand, but Berg stopped him. Christina gave the keys to Berg who, in turn, gave them to Bailey, who stuck them in his pocket. Bailey said later he did not want Murphy to have the keys to drive "[b]ecause he wasn't walking too good, and I didn't want him to hurt nobody, and neither did Joe Berg." *Record* at 212.

Murphy was furious because his friends had taken his keys and because Christina would not leave with him. Berg and others, including Murphy's parents, had confiscated his keys in the past, so Murphy had several sets made. Although his friends did not know if he had another set that night, Murphy testified without contradiction that he did have an extra set of keys and that he could have left at any time. Murphy claimed that he stayed at Berg's home not because his friends had his keys, but because he wanted Christina to leave with him. As the argument progressed, Murphy became increasingly angry and abusive. He accused Berg and Bailey of planning to rape Christina. Berg offered to take Murphy home, but Murphy refused. Berg's attempts to reason with him failed, and the two wrestled on the ground outside.

Finally, sometime after midnight, Berg lost all patience with Murphy and told him to "get the hell out." *Record* at 382. Bailey also became angered by Murphy's continuing personal irrational invective and threw Murphy's keys at him, telling him if he wanted to leave so much he could go. Christina protested, but Murphy picked up the keys and drove away, his car spewing gravel and narrowly missing a mailbox. Bailey and Berg left immediately to drive Christina home. Murphy drove a few blocks, then returned to Berg's house. When he found his friends had left, he drove away, drunk and angry.

1. Administratrix's complaint named Murphy, his parents, Christina, Berg, and Bailey. All but

At approximately 2:00 a.m., after a high-speed police chase through Kokomo, Murphy crashed into Robert's patrol car and killed him. Murphy's blood alcohol content after the accident registered .12. The results of a blood test for drugs other than marijuana were negative; no test was performed which would detect the presence of marijuana in Murphy's body.

Murphy was convicted of reckless homicide and sentenced to five years' probation. Habel pled guilty to two counts of furnishing alcohol to a minor and served three and one-half months of a six-month sentence.

On March 29, 1983, Administratrix filed suit [1] against Berg and Bailey for their roles in the events leading to Robert's death. On July 23, 1984, after the trial court heard oral argument and after the parties submitted briefs on the motion, the trial court granted summary judgment in favor of Berg and Bailey and made the following findings of fact and conclusions of law:

### "Findings of Fact

1. Defendant Joseph A. Berg did not furnish alcohol to co-defendant Keith A. Murphy.

2. Defendant Joseph A. Berg had possession of a set of car keys belonging to Keith A. Murphy for an unknown period of time in the hours immediately preceding the collision which gives rise to this cause of action.

3. Defendant Joseph A. Berg received the aforementioned keys from co-defendant Chris Weitzel and turned over said keys to co-defendant Ronald Bailey.

### Conclusions of Law

1. Defendant Joseph A. Berg cannot be said to have 'furnished' alcohol to co-defendant Keith A. Murphy in any sense which would give rise to liability for negligence under Indiana law.

Berg and Bailey settled.

2. Defendant Joseph A. Berg cannot be said to have assumed a duty to control co-defendant Keith A. Murphy.

3. Joseph A. Berg cannot be said to have had any right to control the actions of Keith A. Murphy, the automobile of Keith A. Murphy, or the car keys of Keith A. Murphy.

4. Even had defendant Joseph A. Berg assumed a duty to control the actions of co-defendant Keith A. Murphy or the automobile or keys of co-defendant Keith A. Murphy, there is no showing of reliance on the part of claimant sufficient to give rise to a cause of action [f]or any alleged breach of such duty."

*Record* at 636–37. Although the language quoted here refers only to Berg, the trial court stated elsewhere that it also granted summary judgment for Bailey for the reasons set forth in these findings of fact and conclusions of law. This appeal ensued.

## ISSUES

Administratrix presents five issues, herein restated, for our consideration:

1. Does a genuine issue of material fact exist as to whether Berg or Bailey furnished alcohol to Murphy, a minor?

2. Does a genuine issue of material fact exist as to whether Berg or Bailey delivered marijuana to Murphy?

3. Can either Berg or Bailey be liable for negligent entrustment to Murphy of a motor vehicle that they neither owned nor had a right to control?

4. Can Berg or Bailey be liable for negligent performance of a gratuitously assumed duty?

5. Was Berg negligent in directing Murphy to leave the premises?

The parties have not raised, so we do not consider, the applicability of the fireman's rule to the Administratrix's derivative claim. The fireman's rule "provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity." *Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211, 215.

## DECISION

### INTRODUCTION

■ Administratrix has asserted various theories in support of her request that Berg and Bailey be held liable for damages arising from Murphy's collision with Robert. Before turning to our examination of these theories, it is well to recall that unless a plaintiff shows an affirmative act of misconduct by a defendant, negligence arising from nonfeasance must be premised on a special relationship between the parties. *See Ember v. B.F.D.* (1986), Ind.App., 490 N.E.2d 764; *see generally* Prosser and Keeton on the Law of Torts § 56 (W. Keeton 5th ed. 1984). As we have observed elsewhere regarding what duty is required for the protection of others, Indiana courts "have shown great reluctance to require an individual to take any action to control a third party when there is no special relationship between them." *Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534, 538, *trans. denied.* Restatement (Second) of Torts § 315 (1965) sets forth the general rule as follows:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

*See also Campbell v. Board of Trustees of Wabash College* (1986), Ind.App., 495 N.E.2d 227, *trans. denied; Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, *trans. denied; Pursley v. Ford Motor Co.* (1984), Ind.App., 462 N.E.2d 247, *trans. denied; Sports, Inc., supra;* Harper & Kime, *The Duty to Control the Conduct of Another,* 43 Yale L.J. 886 (1934).

ISSUE ONE—Does a genuine issue of material fact exist as to whether Berg or Bailey furnished alcohol to Murphy, a minor?

PARTIES' CONTENTIONS—Administratrix contends that questions of fact exist regarding whether Berg and Bailey furnished alcohol to Murphy. Specifically, she argues that the facts support the inferences that Bailey knowingly supplied the funds used to purchase the alcohol and that Berg had joint possession of the alcohol with Murphy and poured Murphy's first drink.

Bailey responds that his loan of funds to be used to purchase alcohol does not constitute furnishing an alcoholic beverage because he had neither possession of nor control of Murphy's liquor at any time. Berg argues that neither joint possession of an alcoholic beverage nor pouring another person a drink from a common bottle constitutes furnishing alcohol to that person.

CONCLUSION—No issue of material fact exists as to whether Berg or Bailey furnished alcohol to Murphy, a minor.

The statute in effect at the time of this occurrence declared it to be "unlawful for a person to sell, barter, exchange, provide, or furnish an alcoholic beverage to a minor." Ind.Code 7.1–5–7–8 (1982) (amended 1983 and 1986). Under Indiana law, any person who knowingly provides or furnishes an alcoholic beverage to a minor in violation of IC 7.1–5–7–8 with knowledge that the minor will be driving on the public highways may be liable to third parties injured as a result of the minor's intoxication. *Brattain v. Herron* (1974), 159 Ind.App. 663, 309 N.E.2d 150. Whether Berg or Bailey can be held liable under this theory depends on whether their conduct, viewed most favorably to Administratrix, constitutes a violation of the statute.[2]

No Indiana court thus far has defined precisely what constitutes "furnishing" alcoholic beverages to another in the context of the modern alcoholic beverage statutes. In 1919, the Indiana Supreme Court, construing a prohibition statute which pro-

scribed possession of intoxicating liquor with intent to furnish or otherwise dispose of it, defined the term "to furnish" to mean "to supply for use." *Banks v. State* (1919), 188 Ind. 353, 356, 123 N.E. 691, 692. The purpose of the statute, according to the court, was "to protect the health and morals of the inhabitants of the state by keeping intoxicating liquors out of their possession and beyond their control." *Id.* at 358–59, 123 N.E. at 693. Banks had purchased the alcohol for his son-in-law and himself with money supplied by both. The court observed, "If [Banks] had delivered the liquor in accordance with his declared purpose, he would have been *the active means* by and through which the liquor in question would have been placed in the custody and control of persons whom the statute was enacted to protect." *Id.* at 359, 123 N.E. at 693 (emphasis supplied). The evidence was sufficient to demonstrate that Banks possessed liquor with intent to furnish or otherwise dispose of it.

Liability to third parties based on a violation of the modern liquor laws of this state dates from 1966, when the Indiana Supreme Court held that a retail druggist who sold liquor to a boy of seventeen in violation of a criminal statute could be liable to a third party injured in a subsequent auto accident.[3] *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847. Eight years later, in *Brattain, supra,* the Court of Appeals extended the *Elder* court's reasoning to encompass the actions of a social host who allowed her minor brother and his friend to obtain beer and whiskey from her refrigerator. The statute then in effect forbade any person to give, provide, or furnish alcoholic beverages to a minor. This court declared,

"We see no distinction between one who sells alcoholic beverages to a minor and one who gives alcoholic beverages to a minor. The Legislature has provided

2. Because the incident giving rise to this litigation occurred prior to April 1, 1986, we need not address and therefore express no opinion regarding the impact of IC 7.1–5–10–15.5 (Supp. 1987), which prohibits civil liability for the furnishing of alcohol unless the person furnishing the alcohol had actual knowledge that the per-

son to whom the alcohol was furnished was visibly intoxicated at the time the alcoholic beverage was furnished.

3. For a discussion of early Indiana statutes providing for civil liability, see *Campbell, supra.*

that either of these actions is a violation of the statute.

Thus, it is our opinion that *any person who violates the statute* as it pertains to a minor *can be liable* in a civil action for negligence, *since the violation of the statute as it pertains to a minor is negligence per se.* The Legislature has not seen fit to distinguish between a seller and a social provider of alcoholic beverages to a minor and it is our opinion that no such distinction would be either logical or equitable."

*Id.* 159 Ind.App. at 674, 309 N.E.2d at 156 (emphasis supplied). This court found the evidence of Mrs. Brattain's conduct sufficient to establish that she violated the statute:

"The evidence discloses that while Mrs. Brattain did not serve the liquor to Mr. Farmer she was aware that Mr. Farmer and his friend were obtaining the beer and whiskey from her refrigerator. The evidence discloses that Mrs. Brattain made no objection at any time to Mr. Farmer's consumption of the alcoholic beverages, even though she was present on the premises during the entire four hour period when Farmer and his friend were in her residence. It is our opinion that the evidence shows conclusively that Mrs. Brattain violated the statute in question."

*Id.* at 676, 309 N.E.2d at 157–58.

The Indiana Supreme Court drew on the reasoning in *Brattain* to hold that, in the context of an alleged sale to one known to be intoxicated, an injured third party could show a statutory violation without proof of a direct sale. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73. In *Whisman*, bartenders at the Eagle's Lodge sold drinks to two of Fawcett's friends who, in turn, delivered the drinks to Fawcett in another room. The court observed that the plaintiff, a third party injured in a subsequent accident, could have shown a violation of IC 7.1–5–10–15 (1982) (amended 1985) had he demonstrated that the bartenders knew

or had good reason to believe that the two friends intended to give the drinks to Fawcett, whom the bartenders knew to be intoxicated.

More recently, the Court of Appeals, discerning no distinction between one who sells and one who gives or furnishes alcoholic beverages in violation of IC 7.1–5–10–15, recognized a cause of action against one who "merely furnishes 'one more drink' to an intoxicated person." *Ashlock, supra* at 1169. Robert Norris, a patron in a bar, bought several drinks for Cindy Morrow who became intoxicated but insisted on driving her automobile after she left the bar. She struck and killed Anthony Ashlock, who was jogging along the shoulder of the highway. The Court of Appeals reversed a summary judgment for Norris, finding a genuine issue of material fact as to whether Norris knew Morrow was intoxicated before he bought her a drink and, therefore, gave an alcoholic beverage to a person he knew to be in a state of intoxication.[4]

In summary, Indiana courts have determined that one can "furnish" alcoholic beverages to another person by purchasing beverages on the other person's behalf, *Banks, supra;* by knowingly allowing the other person to take the beverages from one's possession, *Brattain, supra;* by selling the beverages to a third person with knowledge that he intends to furnish them to the other person, *Whisman, supra;* or by buying the other person a drink, *Ashlock, supra.* In each of these cases, one person supplied alcoholic beverages to the other for his or her use. Each supplier was *"the active means* by and through which the liquor [was] placed in the custody and control of persons whom the statute was enacted to protect." *Banks, supra,* 188 Ind. at 359, 123 N.E. at 693 (emphasis supplied).

■ Thus, no Indiana case has resolved the question whether the legislature intended IC 7.1–5–7–8 to proscribe the conduct of one who *did not actually supply the li-*

---

4. Indiana is apparently one of a minority of states imposing liability on those who, in violation of statute, furnish alcohol in a social set-ting. For a criticism of this trend, see Note, *Social Host Liability: Opening A Pandora's Box,* 61 *Ind.L.J.* 85 (1985).

*quor,* but who played only a supporting role by supplying the money to purchase it or by sharing the bottle. Administratrix has not cited, and we have not found, any case in any jurisdiction that has answered this question in the affirmative. *See, e.g., Christensen v. Parrish* (1978), 82 Mich. App. 409, 266 N.W.2d 826. *See generally* Annot., 97 A.L.R.3rd 528 (1980).

In 1977, the California Court of Appeals concluded that a minor who did no more than contribute money to a common fund to be used for the purchase of liquor neither furnished alcohol nor caused it to be furnished to his minor companions in violation of the statute. *Bennett v. Letterly* (1977), 74 Cal.App.3d 901, 141 Cal.Rptr. 682. While declining to state definitively the meaning of the word "furnish," the California court offered several synonyms: "To supply, to offer for use, to give, to hand.... In relation to a physical object or substance, the word 'furnish' connotes *possession or control* over the thing furnished by the one who furnishes it." *Id.* at 904–05, 141 Cal.Rptr. at 684 (citations omitted) (emphasis supplied). The evidence before the California court indicated that Letterly had neither purchased the liquor nor exercised any control over it once his companions brought it back to his home. The minor who ultimately caused the accident and another friend consumed the entire bottle of whiskey, pouring and mixing their own drinks and serving themselves. Because Letterly had neither possession of nor control over the liquor itself, the California Court concluded that his conduct did not constitute "furnishing" alcohol to a minor.

More recently, the California Court of Appeals in *Sagadin v. Ripper* (1985), 175 Cal.App.3d 1141, 221 Cal.Rptr. 675, concluded that the father of a teenage social host who, like the defendant in *Brattain, supra,* tacitly authorized his son to provide his teenage guests with beer belonging to the father, furnished alcohol to the teenage guests. Both the parents were out of the house during a Halloween party at which the beer was served. The California court found in the father's authorization the requisite affirmative act to constitute furnish-

ing alcohol. "In order to furnish an alcoholic beverage the offender need not pour the drink; it is sufficient if, *having control of the alcohol,* the defendant takes some affirmative step to supply it to the drinker." *Sagadin* at 1158, 221 Cal.Rptr. at 685 (emphasis supplied). *See also Baldwin v. Zoradi* (1981), 123 Cal.App.3d 275, 176 Cal. Rptr. 809; *Calrow v. Appliance Indus., Inc.* (1975), 49 Cal.App.3d 556, 122 Cal. Rptr. 636; *DeMore v. Dieters* (1983), Iowa, 334 N.W.2d 734.

The California court, distinguishing *Bennett, supra,* also determined that the son furnished alcohol to his guests, because he not only contributed to a common fund for the purchase of additional beer, but also prearranged the purchase, directed two other persons to pick up the kegs, and attached the kegs to his father's beer dispenser. The court concluded the son had "sufficiently participated in the stream of beer availability for it to be said he furnished the beer." *Sagadin, supra* 175 Cal. App.3d at 1158, 221 Cal.Rptr. at 684.

Finally, the California court absolved the boy's mother from liability, finding no evidence of any "affirmative act which directly or inferentially constituted furnishing alcohol" to her son's guests. *Id.,* 221 Cal. Rptr. at 685. The mother had assisted her son with food and decorations for the party. Neither these acts nor providing the room for the party, even with the knowledge that minors would be drinking, was sufficient to constitute furnishing alcohol.

The depositions of the actors in this tragedy indicate that Bailey did no more than lend Murphy twenty dollars. Even if we resolve this conflict most favorably to Administratrix, the nonmovant, and determine that Bailey knew the money was to be used to purchase liquor, we cannot conclude that one who gave money to a minor, when the minor himself then sought out a third party to make the actual purchase, furnished alcohol to the minor in violation of the statute. The statute forbids any person to "sell, barter, exchange, provide, or furnish *an alcoholic beverage* to a minor." IC 7.1–5–7–8 (emphasis supplied). It does not forbid any person to furnish *money* to a

minor, even if the money is used to purchase alcoholic beverages. In the words of one court, "As an act cannot be regarded as negligence which one has a legal right to do, the furnishing of the money for the purchase of the whiskey would not be an act of negligence ... under the statute mentioned, because [the statute] does not penalize the act in question." *Henry Grady Hotel Co. v. Sturgis* (1943), 70 Ga.App. 379, 386, 28 S.E.2d 329, 333.

While we acknowledge that Bailey may have supplied a preliminary link in the chain of events leading to Murphy's ultimate intoxication, we have found no legal basis on which to conclude that he violated the statute. Furnishing money for alcohol is not furnishing alcohol. *Id; see also Bennett, supra.* Because Bailey had neither possession of nor control over the liquor itself, his conduct does not constitute furnishing alcohol to a minor in violation of IC 7.1–5–7–8.

■ Although the facts before the trial court support an inference that Berg, unlike Bailey, did have possession of and control over the Seagram's bottle, Berg and Murphy clearly acquired possession of the liquor simultaneously, at the moment Habel (Berg's uncle) put the bottle in the car, and exercised *joint* control over it throughout the evening. Habel, not Berg, was the active means by which Murphy acquired custody and control of the liquor. Murphy, Berg, and Bailey *together* devised the plan to ask Habel to buy the liquor for them. Murphy himself drove Berg to Habel's house and accompanied him inside. Administratrix has not argued, nor could she argue on the basis of cases in this jurisdiction or any other, that Berg furnished alcohol to Murphy simply by acting as his spokesman. Clearly, the proscribed act of furnishing alcohol to Murphy, a minor, was complete well before Berg poured Murphy a drink from their common bottle. Berg did not deliver or transfer any alcohol to Murphy which Murphy did not already possess.

To summarize, we have found no case in Indiana or elsewhere holding that conduct such as that presented here constitutes furnishing an alcoholic beverage to another person. It is not for this court to declare "that they who drink together should pay together if one of the group injures a third party." *Keaton v. Fenton* (1978), 147 Ga. App. 579, 579, 249 S.E.2d 629, 630. *See also Hulse v. Driver* (1974), 11 Wash.App. 509, 524 P.2d 255. Any such consequence is a policy determination for the legislature.

Thus, we conclude that no issue of material fact exists as to whether Bailey or Berg furnished alcohol to Murphy in violation of IC 7.1–5–7–8. Therefore, the trial court correctly granted summary judgment for Berg and Bailey on this theory.

ISSUE TWO—Does a genuine issue of material fact exist as to whether Berg or Bailey delivered marijuana to Murphy?

PARTIES' CONTENTIONS—Administratrix contends that questions of fact exist regarding whether Berg or Bailey delivered marijuana to Murphy in violation of IC 35–48–4–10 (1982) (amended 1987).

Bailey and Berg respond that no question of material fact exists that either Berg or Bailey delivered marijuana to Murphy.

CONCLUSION—No issue of material fact exists as to whether Berg or Bailey delivered marijuana to Murphy.

■ The harm caused by the use of marijuana is confirmed by scientific studies of its effects on drivers' abilities. Marijuana use impairs driver functions associated with visual search and recognition. Mason & McBay, *Cannabis: Pharmacology and Interpretation of Effects*, 30 J. Forensic Sci. 615 (1985). Impaired judgment and concentration have been subjectively observed by driving test participants. *Id.* Also of concern is the *additive* effect of marijuana when combined with alcohol. *Id.*

It is reasonable to conclude, therefore, that our legislature intended to promote the public health and safety when it enacted comprehensive criminal statutes prohibiting the delivery and use of marijuana. IC 35–48–4–10(a) provides that "[a] person who knowingly or intentionally ... delivers marijuana ... commits dealing in marijuana ... a Class A misdemeanor." The legis-

lature has shown greater concern for persons under age eighteen by specifying that delivery of marijuana to recipients under age eighteen constitutes a class D felony. IC 35–48–4–10(b)(1)(A). Criminal penalties are also imposed on those who operate a vehicle while intoxicated by a controlled substance (including marijuana), alcohol, or a combination thereof. IC 9–4–1–54 (1982) (presently codified as amended at IC 9–11–2–1 (Supp.1987)).

In the context of furnishing alcohol to a minor, the Court in *Elder* observed that "[t]he function of a prohibitory statute in negligence cases is the establishment of a duty, the violation of which constitutes the negligence." *Elder, supra,* 247 Ind. at 602, 217 N.E.2d at 850. Even if we extended the reasoning of the court in *Elder* and held that the delivery of marijuana to a minor constitutes negligence per se,[5] we would still be required to affirm the summary judgment on the marijuana issue entered in favor of Berg and Bailey.

Administratrix's attempt to base liability on the delivery of marijuana fails because she did not allege which of the two, Berg or Bailey, transferred the marijuana to Murphy. The *only* evidence of delivery of marijuana presented to the court was by way of Murphy's deposition.

"Q: [Mr. Milliken] And there was going to be drinking involved at the party at Berg's house, that was understood, wasn't it?

A: [Murphy] Yes.

Q: And apparently use of marijuana?

A: It wasn't planned, but it was there.

Q: Okay. Joe [Berg] had it there already? You ...

A: One of them did.

Q: Somebody did? All right. You didn't bring it?

A: No."

*Record* at 353–54. *See also record* at 334–35, 389–90.

■ The allegation that one of two persons committed the negligent act is not sufficient to make a prima facie case. "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough...." Prosser and Keeton on the Law of Torts, *supra* at § 41. The allegation that one or the other defendant delivered the marijuana leaves the evidence perfectly counterpoised, with the probabilities preponderating toward neither. *See Czarnecki v. Hagenow* (1985), Ind.App., 477 N.E.2d 964 (evidence that tractor owner or one of several employees tied rope which shattered tractor cab window injuring plaintiff did not present a genuine factual issue to court). The court correctly granted summary judgment on this issue.

ISSUE THREE—Can either Berg or Bailey be liable for negligent entrustment of a motor vehicle that they neither owned nor had a right to control?

PARTIES' CONTENTIONS—Administratrix contends that when Berg and Bailey took possession of Murphy's car keys they legitimately exercised a right of control over Murphy's car. Then, knowing that he was intoxicated and that he intended to drive, they returned the keys to him, thus negligently entrusting control of the vehicle to him.

Berg and Bailey say they cannot be liable for negligently entrusting Murphy's own car to him because they neither owned nor had a right to control the car.

CONCLUSION—Neither Berg nor Bailey can be liable for negligent entrustment of a motor vehicle that they neither owned nor had a right to control.

■ Under Indiana law, an owner or another person with the right to control an

---

5. Few courts have addressed the question of liability arising from the delivery or use of marijuana. *See, e.g., Foreman v. Minnie* (1984), Mont., 689 P.2d 1210 (court approved jury instruction that driving under the influence of alcohol, or in this instance marijuana, was negligence as a matter of law); *Aebischer v. Reidt* (1985), 74 Or.App. 692, 704 P.2d 531 (court recognized that defendant might incur liability for refilling marijuana pipe knowing that ingestion by driver would contribute to the driver's intoxication).

automobile, who supplies the automobile for the use of another knowing the other is intoxicated at the time he entrusts the automobile, may be liable for the resulting harm. *Sports, Inc., supra; see also Fisher v. Fletcher* (1922), 191 Ind. 529, 133 N.E. 834; *Ellsworth v. Ludwig* (1967), 140 Ind. App. 437, 223 N.E.2d 764.

Restatement (Second) of Torts § 308 (1965) [hereinafter cited as § 308] sets out the general rule as follows:

> "It is negligence to permit a third person to use a thing ... which is *under the control of the actor,* if the actor knows or should know that such person intends or is likely to use the thing ... in such a manner as to create an unreasonable risk of harm to others."

(Emphasis supplied). Comment a to § 308 explains,

> "The words 'under the control of the actor' are used to indicate that *the third person is entitled to possess or use the thing ... only by the consent of the actor,* and that *the actor has reason to believe that by withholding consent he can prevent the third person from using the thing ...*"

(Emphasis supplied).

The Supreme Court of Montana, applying the Restatement's definition of control, determined that the physical power to deprive an intoxicated driver of the keys to another's vehicle was insufficient control to constitute negligent entrustment of the vehicle. *Bahm v. Dormanen* (1975), 168 Mont. 408, 543 P.2d 379. The court observed, "[N]egligent entrustment is founded on control which is greater [than] physical power to prevent. *A superior if not exclusive legal right to the object* is a precondition to the imposition of the legal duty." *Id.* at 412, 543 P.2d at 382 (emphasis supplied).

In *Hulse, supra,* the Washington Court of Appeals refused to apply the theory of negligent entrustment to three minor passengers who unsuccessfully attempted to persuade the intoxicated owner of the car not to drive. The owner, Michael Driver, was driving and drinking wine with three of his friends. Two of the boys complained that Michael was becoming careless and suggested that someone else drive. One of them, Richard Bruce, took over the wheel for a short time, but stopped the car to let Donald Brown drive. Michael slid into the driver's seat and resumed driving, ignoring his friends' attempts to dissuade him. Soon thereafter, Michael drove into the oncoming lane of traffic and collided head-on with Hulse's vehicle. The court in *Hulse* refused to apply the negligent entrustment theory on these facts, holding that the passengers had no legal basis upon which to deny Michael control of his own car. *See also Ashlock, supra; Sports, Inc., supra* (liability for entrustment only arises when entrustment is by one who owns or has a right to control automobile or chattel in question). *Cf. Ellsworth, supra* (negligent entrustment of employer's vehicle to employee). According to the court in *Hulse,* had the boys refused to relinquish the wheel when Michael demanded control of his automobile, their actions would have amounted to a conversion.

We recognize that Administratrix's argument is premised on the belief that control of the keys implied control of the car. This argument, however, is not supported by the record because Murphy states without contradiction that he had a duplicate set of keys and that he could leave at any time. Even if we assume, arguendo, that Berg and Bailey could effectively control Murphy's use of the car by returning the keys, Berg and Bailey had no legal right to deny Murphy control of his car because they neither owned it nor had a right to control it. Therefore, the trial court properly entered summary judgment for Berg and Bailey on the theory of negligent entrustment.

ISSUE FOUR—Can Berg or Bailey be liable for negligent performance of a gratuitously assumed duty?

PARTIES' CONTENTIONS—Administratrix maintains that, by taking possession of Murphy's car keys, Berg and Bailey negligently performed a gratuitously assumed duty to protect Robert.

Berg and Bailey respond that the act of taking possession of a set of car keys can-

not constitute an undertaking to keep Murphy off the road when they had no right and were under no obligation to control Murphy or his car, and when Murphy did not invite them to assume such a duty. CONCLUSION—Berg and Bailey did not assume a gratuitous duty to protect Robert.

The Indiana courts have recognized that "a duty may be imposed upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken." *Board of Comm'rs v. Hatton* (1981), Ind. App., 427 N.E.2d 696, 699, *trans. denied.* *See also Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212. It is apparent that the actor must specifically undertake to perform the task that he is charged with having performed negligently, "for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully." *Blessing v. United States* (E.D.Pa.1978), 447 F.Supp. 1160, 1188–89. *See also Patentas v. United States* (3d Cir.1982), 687 F.2d 707; *Plan–Tec, supra.*

■ An actor is liable for his negligent performance if he has undertaken to perform a legal duty owed by the other to the third person *on behalf of* and *in lieu of* that other. Liability does not arise in the situation when "one undertakes to perform functions coordinate to—or even duplicative of—activities imposed on another by a legal duty, but rather the situation in which one *actually undertakes to perform for the other the legal duty itself." Blessing, supra,* at 1194 (emphasis supplied).

■ In one case, a Michigan court determined that a labor union had not undertaken an employer's duty to provide a safe work place when it informed the employer that an errant employee, one Morgan, could not be fired. *Bescoe v. Laborers' Union Local No. 334* (1980), 98 Mich.App. 389, 295 N.W.2d 892. Morgan attacked the plaintiff, a fellow employee, and the plaintiff sued the union. The Michigan court set out the battered plaintiff's burden as follows:

"While the question of whether a party has undertaken a duty for another is one of fact and is, as such, for the jury, there must be evidence that the union *actively undertook the employer's duty* to provide a safe work place as regards Morgan. The evidence must show that the employer *relinquished control* over this aspect of its operation in favor of the union."

*Id.* at 412, 295 N.W.2d at 902 (citations omitted) (emphasis supplied). *See also Canipe v. National Loss Control Serv. Corp.* (5th Cir.1984), 736 F.2d 1055, *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 969; *Plan–Tec, supra; Perry v. Northern Ind. Pub. Serv. Co.* (1982), Ind. App., 433 N.E.2d 44, *trans. denied.* The court found nothing in the record to indicate that the employer had relinquished the right to fire Morgan. The union was not responsible for Morgan's acts, according to the court, simply because it had successfully bargained with the employer to keep him from being fired. "If Morgan's presence ... created an unreasonable risk of harm to his fellow employees such that he should have been removed from the work site, then it was incumbent on his employer to see to it." *Bescoe, supra,* 98 Mich.App. at 413, 295 N.W.2d at 902.

Applying the law to the facts, we find that the court was correct in entering summary judgment in favor of Berg and Bailey. Simply stated, there was no fact or reasonable inference arising from the evidence that Berg and Bailey gratuitously assumed a duty to prevent Murphy from driving.

■ Berg and Bailey, along with Christina, were aware of Murphy's poor driving record and also believed Murphy to be intoxicated to the point of incapacity. As we observed in Issue Three, however, Berg and Bailey had no right to control the car keys which Christina managed to spirit away from Murphy. And Berg, as host, had no right or duty to restrain Murphy. *See* Issue V, *infra.* In a similar context, we held that a private security guard would be subject to the charge of false imprisonment for attempting to arrest a

private citizen for the misdemeanor of driving while intoxicated. *Sports, Inc., supra.*

While it might be argued that Berg and Bailey gratuitously assumed a duty at the invitation of Murphy, the uncontroverted facts are inconsistent with this theory. While Administratrix makes much of the fact that the group managed to obtain Murphy's keys, Murphy never relinquished control of the keys. And when one or another of the group obtained the keys, Murphy invariably attempted to regain them. *Record* at 458–61. He retained possession of the extra set of keys and resisted their efforts to keep him from driving.

Even if we could conclude that Murphy invited the others to assume a duty, Berg and Bailey never took control of the car. Murphy testified without contradiction that he maintained a duplicate set of keys in his car so that he could leave at any time. *Record* 377–87.

Because Berg and Bailey had no right to prevent Murphy from driving and never took control of the car, and because Murphy never relinquished control when he continued to possess a second set of keys, Berg and Bailey cannot be held liable for failing to prevent Murphy from driving. The court was therefore correct in granting summary judgment on this issue to Berg and Bailey.

ISSUE FIVE—Was Berg liable for damages to Administratrix because he directed Murphy to leave the premises?

PARTIES' CONTENTIONS—Administratrix argues that Berg, as social host, should be held liable because Berg ordered Murphy off the premises knowing that Murphy was intoxicated.

Berg responds that imposing liability based on the facts presented here would constitute an unprecedented change in the law with untoward consequences for social hosts.

CONCLUSION—Berg did not incur liability for ordering Murphy off the premises.

Indiana courts have recognized the relationships of parent-child, master-servant, and custodian-dangerous person as imposing on the actor a duty to control the conduct of a third person. *See Pursley, supra.* The relationship of social host-guest has not been recognized in Indiana to be sufficient, without more, to impose such a duty on a social host. For example, in *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092, our supreme court held that a social host has no duty to act to control the behavior of a guest in order to prevent injury to another guest on the premises.

While Administratrix recognizes the continuing validity of the rule that liability does not arise from nonfeasance, she asserts that Berg's order to Murphy to "get the hell out" was an affirmative act of negligence such that liability should attach, i.e., that Berg unleashed a wild beast on the public streets. An instructive analogy can be drawn here with the case of *Ashlock, supra.* In *Ashlock*, the Third District of the Court of Appeals reversed a summary judgment of the Circuit Court, finding a genuine issue of fact concerning whether the defendant purchased an alcoholic drink for an intoxicated motorist. The court in *Ashlock*, however, expressly rejected the contention that the act of aiding the drunken motorist to her car was a separate basis on which to premise liability. The court concluded that absent some special relationship, or the right to control the automobile, the defendant owed no duty to the public.

Administratrix requests that we now expand our concept of liability to include a social host who forces an intoxicated minor from the premises where the minor has been permitted to drink. In support of this position, the Administratrix rhetorically asks whether such a duty is "truly different from that of the social host who furnishes alcohol to a minor and then permits him to drive from the premises?" *Appellant's Brief* at 35–36. The answer, of course, is that when liability in this area has been found, our courts have done so in order to give effect to the legislative will as enacted in various statutes. *See Elder, supra; Brattain, supra.* Recent legislative action indicates that our conception of liability in this area is already too expansive. In actions accruing after April 1,

1986, our legislature has prohibited the imposition of civil liability, even in cases of a direct furnishing of alcohol, except when "the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished." IC 7.1–5–10–15.5(b)(1) (Supp.1987). Without legislative support to follow here, we are not persuaded that liability should attach to Berg as social host.

In short, as the law now exists, these teenagers under these circumstances are not liable for the havoc created by their drunken frolic.

Affirmed.

SHIELDS, P.J. and SULLIVAN, J., concur.