

**FILED**

Dec 14 2015, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Andrew L. Teel | Jane E. Malloy |
| Lindsey C. Swanson | Ashley A. O'Neil |
| Haller & Colvin, P.C. | Malloy Law, LLC |
| Fort Wayne, Indiana | Fort Wayne, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| F. John Rogers, as Personal Representative of Paul Michalik, Deceased, and R. David Boyer, Trustee of the Bankruptcy Estate of Jerry Lee Chambers, | December 14, 2015 |
| | Court of Appeals Cause No. 02A05-1506-CT-520 |
| *Appellants,* | Appeal from the Allen Superior Court |
| v. | The Honorable Craig J. Bobay, Judge |
| Angela Martin and Brian Paul Brothers, | Trial Court Cause No. 02D02-1204-CT-191 |
| *Appellees.* | |

**Barnes, Judge.**

# Case Summary

F. John Rogers, as the personal representative of Paul Michalik, deceased, and R. David Boyer, as trustee of the bankruptcy estate of Jerry Chambers, (collectively "the Appellants") appeal the trial court's granting of a motion to strike and a motion for summary judgment filed by Angela Martin. We reverse and remand.

# Issues

The Appellants raise two issues.[1] We address the dispositive issues, which we restate as:

    I.    whether the trial court properly granted summary judgment on the Appellants' Dram Shop Act claim; and

    II.    whether the trial court properly granted summary judgment on the Appellants' claim that Martin negligently failed to render aid.

# Facts

In May 2010, Martin was in a romantic relationship with Brian Brothers, who had lived with Martin since 2006 in a house owned by Martin. Martin made substantially more money than Brothers, who cashed his paychecks and gave

---

[1] The Appellants also argue that the trial court improperly granted Martin's motion to strike exhibits to her deposition, which were designated by the Appellants in response to Martin's motion for summary judgment. Martin argues that the photos of Michalik dead in Martin's yard were unauthenticated and that the police report contained unsworn statements, which were inadmissible under Trial Rule 56(E). However, because we resolve the propriety of summary judgment without considering the challenged evidence, we need not decide this issue.

most of the money to Martin. Martin then deposited the money in her personal checking account, which was used to pay bills and other household expenses. Brian used the debit card associated with Martin's checking account to make purchases and withdraw money.

[4] The couple decided to have a birthday party for Brothers on May 8, 2010. They invited friends, family, and coworkers, and guests were allowed to bring their significant others. Brothers bought a keg of beer, which he paid for using the debit card associated with Martin's checking account, and set it up in the garage. About fifty people attended the party, including Brother's coworker Jerry Chambers and his significant other Paul Michalik. Generally, guests served themselves from the keg. However, a pitcher was used to take beer from the keg to the basement. At one point, Martin used the pitcher to take beer to the basement. It is possible that Brothers was playing poker at that time.

[5] At around 2:00 a.m., about ten guests remained, playing cards in basement, and Martin went to bed. She was awoken at approximately 3:30 a.m. by Brothers, who told her that, when he asked Chambers and Michalik to leave, a fist fight ensued, during which he fought Chambers and Michalik and punched Chambers in the nose. Brothers asked for Martin's help getting Chambers and Michalik to leave. When Martin went to the basement, Michalik was lying unconscious on the floor. Brothers and Chambers checked for a pulse and confirmed that Michalik was breathing. Martin returned to bed as Brothers and Chambers carried Michalik upstairs to leave. When Brothers came to bed, Martin asked if Chambers and Michalik had left. Brothers said no, and Martin

instructed him to make sure the men got into their car and left. Shortly thereafter, police arrived, and Michalik was found dead in Martin's yard.

[6] The Appellants filed a complaint against Martin and Brothers alleging in part that Martin violated the Dram Shop Act by furnishing alcohol to Brothers and that Martin failed to render aid to Michalik. Martin filed a motion for summary judgment, and the Appellants responded. Martin then replied, and a hearing was held. The trial court granted Martin's motion for summary judgment. The Appellants now appeal.

## Analysis

[7] Summary judgment is proper only where the designated evidence shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). We review summary judgment de novo and apply the same standard as the trial court. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 423 (Ind. 2015). "We consider only those materials properly designated pursuant to Trial Rule 56 and construe all factual inferences and resolve all doubts as to the existence of a material issue in favor of the non-moving party." *Id.* at 424. "Summary judgment is appropriate when the undisputed material evidence negates one element of a claim." *Estate of Mintz v. Connecticut Gen. Life Ins. Co.*, 905 N.E.2d 994, 998 (Ind. 2009).

### I. Dram Shop Act Liability

[8] The Appellants allege that Martin is liable under Indiana's Dram Shop Act. "In Indiana, common law liability for negligence in the provision of alcoholic

beverages is restricted to cases involving the breach of a statutory duty." *Rauck v. Hawn*, 564 N.E.2d 334, 337 (Ind. Ct. App. 1990). Because Brothers was not a minor, Indiana Code Section 7.1-5-10-15 identifies the specific conduct giving rise to liability. *See id.* That statute prohibits a person from, knowing that another person is intoxicated, selling, bartering, delivering, or giving away an alcoholic beverage to the intoxicated person. Ind. Code § 7.1-5-10-15.[2] However, civil liability is limited by Indiana Code Section 7.1-5-10-15.5, which provides in part:

> (a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.

> (b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

>> (1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

>> (2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

---

[2] This statute was modified in 2014, but the substance of the statute remained the same.

The Dram Shop Act represents a legislative judgment that providers of alcoholic beverages should be liable for the reasonably foreseeable consequences of knowingly serving visibly intoxicated persons. *Pierson v. Serv. Am. Corp.*, 9 N.E.3d 712, 716 (Ind. Ct. App. 2014) *trans. denied*. We have held that the legislature intended, and public policy supports, "the extension of civil liability to family, friend or acquaintance who merely furnishes 'one more drink' to an intoxicated person." *Ashlock v. Norris*, 475 N.E.2d 1167, 1169 (Ind. Ct. App. 1985).

[9] Martin moved for summary judgment only on the basis that she did not furnish alcohol to Brothers. "In each case where it has been held that a defendant furnished alcohol to another for his or her use in violation of the statutes, the supplier was 'the active means' by and through which the liquor was placed in the custody and control of the intoxicated person." *Rauck*, 564 N.E.2d at 337 (citing *Lather v. Berg*, 519 N.E.2d 755, 761 (Ind. Ct. App. 1988)). The Appellants contend that, because Martin's debit card was used to purchase the keg and she delivered a pitcher of beer while Brothers might have been playing poker, there are genuine issues of material fact regarding whether she furnished alcohol to Brothers. In response, Martin asserts that she was not the active means by which Brothers acquired the alcohol because Brothers procured the keg using a debit card associated with an account in which his money was deposited and jointly hosted the party with Martin at the home they shared.

[10] In support of her assertion that she is not liable, Martin cites *Lather*, in which three teens, Joseph Berg, Ronald Bailey, and Keith Murphy, "*together* devised

the plan" to ask someone to buy the liquor for them. *Lather*, 519 N.E.2d at 763. After acquiring the alcohol, one of the teens drove drunk, was involved in a high-speed chase, and crashed into a patrol car, killing the officer. In determining that summary judgment for Murphy's cohorts was proper, we observed:

> we have found no case in Indiana or elsewhere holding that conduct such as that presented here constitutes furnishing an alcoholic beverage to another person. It is not for this court to declare "that they who drink together should pay together if one of the group injures a third party." Any such consequence is a policy determination for the legislature.

*Id.* (citations omitted).

[11] The extremely fact sensitive nature of these cases makes comparison difficult. For example, in *Lather* the issue of joint control was relevant where Berg poured Murphy's first drink and, thereafter, Murphy poured his own drinks or drank straight from the bottle of alcohol and, for the most part, Berg and Murphy shared the bottle of alcohol. We observed that "Berg and Murphy clearly acquired possession of the liquor simultaneously . . . and exercised *joint* control over it throughout the evening." *Id.* We concluded, "Berg did not deliver or transfer any alcohol to Murphy which Murphy did not already possess." *Id.*

[12] Here, however, the issue is not the joint control of a single bottle of alcohol; instead, the issue is whether Martin furnished Brothers beer from a keg, which was purchased by Martin and Brothers and shared with their guests. Although Brothers testified that he poured all of his own beer from the keg, Martin

testified that she served a pitcher of beer to the poker players in the basement and it is possible Brothers was at the table.

[13]  In *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014), our supreme court reminded us that summary judgment allows a trial court to dispose of cases where only legal issues exist; it is not a summary trial. "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004. The possibility that Martin served beer to Brothers, even if they jointly acquired the keg itself, is sufficient, though minimally so, to raise a factual issue to be resolved at trial.[3] *See id.* As such, Martin has not negated an element of the Appellants' claim so as to justify summary judgment on this claim.

## II.  Failure to Render Aid

[14]  Martin also sought summary judgment on the Appellants' claim that Martin failed to render aid to Michalik. To recover on a theory of negligence, the Appellants must establish: (1) Martin's duty to conform her conduct to a standard of care arising from her relationship with Michalik; (2) Martin's failure to conform her conduct to that standard of care; and (3) an injury to Michalik proximately caused by the failure. *See Estate of Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind. 2003).

---

[3]  Again, because Martin moved for summary judgment only on the issue of whether she furnished alcohol to Brothers, whether Brothers was visibly intoxicated is not an issue before us today.

### A. Duty to Render Aid

Whether a defendant has a duty to conform his or her conduct to a certain standard for the plaintiff's benefit is a question of law for the court to decide. *Id.* Courts will generally find a duty where reasonable persons would recognize and agree that it exists. *Id.*

"As a general rule, an individual does not have a duty to aid or protect another person, even if he knows that person needs assistance." *Baker v. Fenneman & Brown Properties, LLC*, 793 N.E.2d 1203, 1206 (Ind. Ct. App. 2003). As we discussed in *Baker*, the Restatement (Second) of Torts § 314A describes certain circumstances in which a party has a duty to render aid. Section 314(A) provides:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> > (a) to protect them against unreasonable risk of physical harm, and
> >
> > (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> (2) An innkeeper is under a similar duty to his guests.
>
> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

[17] Martin contends that she did not owe Michalik a duty to render aid because Section 314A does not impose such a duty on a social host. Although this provision does not expressly impose a duty to render aid on a social host, it was not intended to be an exclusive list of relationships that create a duty to render aid. *See* Restatement (Second) § 314A cmt b ("The relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found."). Thus, although Section 314A does not specifically include a social host/guest relationship, it does not exclude the imposition of such a duty.

[18] In circumstances where the element of duty has not already been declared or otherwise articulated, the three-part balancing test articulated in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), is a useful tool in determining whether a duty exists. *See N. Indiana Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003). "This analysis involves a balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Kramer v. Catholic Charities of Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 233 (Ind. 2015) (citing *Webb,* 575 N.E.2d at 996).

[19] Regarding the relationship between the parties, Michalik was a guest in the home Martin shared with Brothers. Although Michalik was not specifically

invited to the party, Chambers was personally invited, and Michalik was there as Chambers's significant other. There is designated evidence showing that it was "okay" for Chambers to bring his significant other. App. p. 138.

[20] In the context of premises liability, our supreme court has held, "A landowner owes to an invitee or social guest 'a duty to exercise reasonable care for his protection while he is on the landowner's premises.'" *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011) (quoting *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind. 1991)). The *Burrell* court reasoned, "If a landowner induces a social guest to enter his land by express or reasonably implied invitation, then the landowner leads that guest, like any other entrant, to believe that the land has been prepared for his safety." *Burrell*, 569 N.E.2d at 643. We see no reason why a social host should be required to keep the premises reasonably safe for social guests but should not have a duty to render aid to an injured guest on his or her property. Thus, the social host/guest relationship is a special relationship as it relates to a duty to render aid.

[21] "Regarding the reasonable foreseeability of harm, 'we examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.'" *Kramer*, 32 N.E.3d at 234 (quoting *Webb,* 575 N.E.2d at 997). "'Foreseeability does not mean that the exact hazard or precise consequence should have been foreseen, but it also does not encompass anything that might occur.'" *Id.* (citation omitted). Here, Martin was awoken by Brothers, who was upset because Chambers and Michalik refused to leave

and "attacked him and . . . he fought them both." App. p. 149. Martin knew that Brothers had punched Chambers in the nose and, when Martin saw Chambers, he had blood on his face. Although Michalik did not appear to Martin to be injured from the fight, when Martin saw him he was lying unconscious on the floor. Brothers and Chambers checked Michalik's pulse and confirmed he was breathing. Then, Michalik had to be carried out of the house by Brothers and Chambers. These facts establish that harm to Michalik—from the fight or intoxication or a combination of both—was reasonably foreseeable.

[22] Finally, regarding public policy, Martin contends that imposing a duty to render aid on a host places an onerous burden on people with no medical training to diagnose injuries and determine what aid is appropriate. In *Baker*, we rejected a similar argument after recognizing that the duty to render aid only requires one to "'exercise reasonable care under the circumstances.'" *Baker*, 793 N.E.2d at 1210 (quoting Restatement (Second) § 314A cmt e).

[23] In the context of an invitee/invitor relationship, our supreme court acknowledged "that, under some circumstances, moral and humanitarian considerations may require one to render assistance to another who has been injured, even though the injury was not due to negligence on his part and may have been caused by the negligence of the injured person." *L.S. Ayres & Co. v. Hicks*, 220 Ind. 86, 94, 40 N.E.2d 334, 337 (1942). The *L.S. Ayres* court acknowledged that other relationships may impose a similar obligation but declined to further pursue that inquiry at that time. *Id.* at 95; 40 N.E.2d at 337.

Having determined that the social host/guest relationship is a special relationship, we believe that the same moral and humanitarian concerns require a social host to render assistance to an injured person in his or her home regardless of the cause of the injury.

[24]  Thus, having considered the relationship between a social guest and a host, the foreseeability of harm to someone who is unconscious after an evening of drinking and a fist fight, and the moral and humanitarian concerns of requiring one to aid an injured guest in his or her home, we conclude that Martin had a duty to exercise reasonable care under the circumstances. This conclusion is consistent with our holding in *Baker*, in which we held a business invitor had a duty provide assistance to a patron even though the business was not responsible for the patron's illness. *See Baker*, 793 N.E.2d at 1210.

### B.  Breach of Duty to Render Aid

[25]  Martin argues that, even if she had a duty to render aid, she did not breach her duty as matter of law. "Whether a particular act or omission is a breach of duty is generally a question of fact for the jury." *Sharp*, 790 N.E.2d at 466. Breach can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts. *Id.*

[26]  Comment f to Section 314(A) explains that the defendant:

> is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man

over to a physician, or to those who will look after him and see that medical assistance is obtained. He is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him, or whose friends are present and apparently in a position to give him all necessary assistance.

[27] Here, when Martin saw Michalik lying on the basement floor, she asked if he was okay and Chambers and Brothers checked his pulse and confirmed that he was breathing. Martin stated that she thought Michalik was "just passed out from drinking too much or something" and suggested that Chambers "take him and make sure he doesn't have any alcohol poisoning." App. p. 209 (quotation omitted). Chambers and Brothers then carried Michalik upstairs by his arms and legs, and Martin went back to her room. When Brothers eventually came to bed, Martin asked if everything was taken care of, and Brothers said no and indicated they had not left the property.

[28] Martin contends that she did not breach any duty owed to Michalik because, when she left Michalik, he was not left unattended; he was being carried upstairs by Brothers and Chambers. In response, the Appellants question Chambers' competency to care for Michalik. Whether Martin's actions were reasonable under these facts is a quintessential question of fact for the jury to decide. Martin has not shown that the question of breach can be decided as a matter of law.

# Conclusion

[29] Because there is a question of fact regarding whether Martin furnished alcohol to Brothers, the trial court erroneously granted summary judgment to Martin on the Appellants' Dram Shop Act claim. Further, we conclude that Martin, as a social host, owed Michalik a duty to render aid, and questions of fact remain regarding whether she breached that duty. We reverse and remand.

[30] Reversed and remanded.

Kirsch, J., and Najam, J., concur.