GOLIBART ET AL. *v.* SULLIVAN, BY NEXT FRIEND.

[No. 4,341.   Filed February 4, 1903.]

TRIAL.—*Evidence.—Motion to Strike Out.*—In an action by a boy for damages for assault and false imprisonment, the boy's mother, who testified as to what took place when she went to procure the boy's release, concluded her testimony in these words: "And I never got him until these men came into the front door." *Held* that the statement of the witness was one of fact and not a conclusion, and that a motion to strike out was properly overruled. p. 432.

SAME.—*Prejudicial Evidence.—Striking Out.*—That evidence is prejudicial, furnishes no ground for striking it out. p. 432.

EVIDENCE.—*When not Part of Res Gestæ.*—In an action for damages for the assault and false imprisonment of a boy, evidence as to what was said by defendant some time after the boy's release was properly excluded. p. 432.

TRIAL.—*Evidence not Responsive to Question.—Motion to Strike Out.*—Defendant was charged with assaulting and falsely imprisoning plaintiff by tying plaintiff's hands with a rope, thereby bruising the wrists. Defendant, as a witness on her own behalf, was asked whether, as a result of the tying, there were any marks on plaintiff's wrists. She replied: "There were no marks. He was not hurt in any way at all. I had no intention of hurting him." *Held* that all that part of the answer after the word "marks" was properly stricken out. p. 434.

EVIDENCE.—*Excluded When Immaterial.*—In an action against defendant for assaulting and falsely imprisoning a boy found stealing her cherries, evidence that the cherry tree had previously during the day been raided, was properly excluded. p. 434.

Golibart *v.* Sullivan.

TRIAL.—*Proper Evidence in Rebuttal.*—Where, in an action for being falsely imprisoned by being tied with a rope, the plaintiff on direct examination testified as to how he was tied, it is not reversible error for him to explain on rebuttal the manner of his being tied, though he would have no right on rebuttal to put his own interpretation on what he said on direct examination. *pp. 434, 435.*

ARREST.—*Without Warrant.*—A person, not an officer, is not authorized without a warrant to arrest and imprison one found committing a misdemeanor, when such misdemeanant, upon being apprehended, discontinues and attempts flight. *pp. 435, 436.*

TRIAL.—*Instruction.*—*Damages.*—An instruction limiting the award of damages to any injury which plaintiff "may have sustained," is conditional in its character, and does not assume that plaintiff was damaged. *p. 437.*

SAME.—*Instruction.—Damages.—Presumption.*—Where, in an action against a husband and wife for damages for unlawfully assaulting and detaining a boy, the court gave a general instruction as to what the jury might consider in awarding damages, it will be presumed that the jury understood that the court limited their consideration to the acts of the defendants or either of them. *p. 437.*

HUSBAND AND WIFE.—*Wife's Tort.—Consent of Husband.—Instruction.*—A husband and wife were both made defendants in an action for damages. The evidence showed that plaintiff was with other boys who were taking cherries from defendant's premises; that the wife caught plaintiff, bound him and locked him in her dwelling-house; that sometime afterward the husband came home and was told by the wife what she had done and the imprisoned boy was shown to him; whereupon the husband remarked, "all right." Later the boy was released by the wife. *Held,* that it was proper to submit to the jury the question as to whether or not the husband consented to the acts of his wife. *pp. 438–440.*

FALSE IMPRISONMENT.—*Assault.—Damages.—Mental Suffering.*—In an action for damages for assault and false imprisonment, damages may be recovered for mental suffering, including humiliation. *p. 440.*

From Superior Court of Marion County; *J. L. McMaster*, Judge.

Action by Herbert C. Sullivan, by next friend, against Mary P. Golibart and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*P. W. Bartholomew*, for appellants.
*J. P. Leydendecker*, for appellee.

COMSTOCK, J.—Action for damages by appellee against appellants for personal injury. The cause was tried upon the amended third paragraph of the complaint, demurrers to the first and second having been sustained. In substance said paragraph alleges that on the 7th day of June, 1900, the appellant Mary P. Golibart who was then the wife of her co-appellant Francis L. Golibart, assaulted and unlawfully and maliciously beat the appellee, tied his hands together with a piece of rope and line, thereby badly bruising his arms, hands, and legs, causing great welts to raise on his arms, hands, and legs, and after so unlawfully and maliciously placing him in said condition, she, Mary P. Golibart, unlawfully and maliciously locked the appellee in a room in her house on Park avenue, in the city of Indianapolis, Indiana, and kept him there for a space of some three hours; that Francis L. Golibart, her husband, and said Mary P. Golibart owned said real estate, together with the house in which the appellee was so confined; that the acts aforesaid of the appellant Mary P. Golibart were committed by her in the presence of her husband Francis L. Golibart, and with his consent; that appellee was not released until some time after his mother had appeared and demanded it, and not until other persons in the neighborhood where the appellee was so imprisoned had demanded his release; that after appellee's release the appellants unlawfully had possession of his hat, and unlawfully and maliciously refused to return it upon demand, and he was compelled to go to his home, situated some two miles from where the appellee was confined, bareheaded and without cover for his head; that by reason of said unlawful and malicious acts of the appellants he has been sick; that his nervous system has been greatly shocked; that he has suffered, and will be compelled to suffer, great pain of body and anguish of mind,—and demanded judgment against both appellants in the sum of $5,000.

Appellants filed separate answers. The answer of Fran-

cis L. is a general denial. Mary P. answered: (1) By a general denial; (2) by way of justification, that at the time and place charged in appellee's complaint that she was home in her own house, and alone; that she discovered appellee and several other boys of about his age congregated and trespassing upon her property, situated at number 2103 Park avenue, in the city of Indianapolis, Indiana; that all of them, including the appellee, had unlawfully and wrongfully trespassed upon her property, and were then engaged in committing a felony thereon, to wit, stealing cherries from her cherry trees; that at said time an iron fence ran east and west, directly under one of her cherry trees filled with fruit; that the appellee was discovered by her in the act of picking cherries from said trees while standing on said fence on the south line of her property; that she, upon discovering him, went out to where he was, and he jumped from the fence into her yard, and she, being alone and having no help, detained him, and led him into her house. The others who were with him at the time having run away, she could not secure them also. Desiring to call help by telephone, she tied his hands loosely, and his feet loosely, not injuring him in any regard, but left him so that he could walk and move around. After securing him thus, that she might leave him long enough to go to the telephone and call for help, she went to the telephone to call her husband and the police; that she had no desire to, and did not, injure the appellee in any regard; her object being to teach him a lesson,—that it was wrong and unlawful to steal her fruit; that soon afterwards, on the arrival of his mother, he was delivered to her and taken home without any damage being done to him. The third paragraph of answer pleaded the above facts in mitigation. Appellee replied to the second and third paragraphs of Mary's answer by general denial. The trial resulted in a verdict and judgment in favor of appellee for $250.

The assignment of error consists of six specifications.

The consideration of the first, namely, the court erred in rendering judgment against the appellants for $250, involves the consideration of the other questions discussed. The second is that the court erred in overruling appellant Francis L. Golibart's motion for a new trial. The third that the court erred in overruling appellant Mary P. Golibart's motion for a new trial.

The causes assigned in both of said motions are the same, and may be considered together. Mrs. Lottie Sullivan, the mother of the appellee, testified as a witness in his behalf, that she went to the residence of the appellants after her boy. She was asked "Just tell when you got there." She gave a detailed account of what she saw and did after she reached the home of the appellants. In concluding her statement she said: "I said, 'Are you that woman's husband?' and he never uttered a word. I says, 'Are you that woman's husband?' and he said nothing; and I set my foot in the door, and my hand on the door, and she forced me back and pinched a blood blister on my finger and foot, until I had to take my hand away, and then she pushed me back and locked the door again, and brought the boy out, or, I unlocked the door and called for help, and— I can not call his name, but there was two men, one was Mr. Sullivan,—not my husband, another Mr. Sullivan,— and a railroad man came to my rescue, and they came in the house, and that is when she released him. He had no hat on. I says, 'Where is the boy's hat?' She says, 'Let him go with me and get his hat.' I says, 'No; we will go home without the hat.' That is as far as it went with me. And I never got him until these men came into the front door." At the conclusion of the statement, counsel for appellants moved to strike out what the witness "last volunteered." Counsel contends that this was a conclusion of the witness. The motion was indefinite, but taking it to apply to the last statement, to wit, that she "never got him until

these men came into the front door," such statement was one of fact.

To the same witness the following question was addressed: "Describe fully to the jury everything about it." The witness answered: "The next day he was so nervous and excited I had to take him to the doctor. He has been so ever since. He is so nervous that everything excites him, and he is frightened, it just seems like—." The witness, in answer to a previous question, had testified that when she took her boy home she examined him and found welts on his hands made by the rope, and that the skin was broken around his feet, and that his legs and arms were bleeding in places. No objection was made to the question. Counsel moved to strike out the answer. The only reason given by counsel in support of the motion was that the statement was prejudicial to appellants' cause. This is not a sufficient reason.

· Lewis W. Montgomery, a patrolman of the city of Indianapolis, testified in behalf of appellants. After Mrs. Sullivan had taken her boy away from the house of the appellants, the witness had a talk with appellant Mary P. Golibart, in which she said she told him "about the trouble." Counsel for appellants then asked the witness this question: "I will ask you if you did not ask Mrs. Golibart if she wanted the boy arrested, and if she did not say to you she did not?" The counsel stated "We offer to prove in answer to this question that he asked Mrs. Golibart if she wanted Herbert arrested, and she said, 'No,' that all she wanted to do was to teach him a lesson." The court sustained the objection. The transaction was concluded. Appellee had been released, and left appellants' home. The objection was properly sustained.

Objection was sustained to the following question propounded to appellant Francis L. Golibart: "You may state whether at any time you gave your consent to her tak-

ing him, tying him, and taking him into the house." No exception was taken to this ruling. The question is therefore not presented. However, as appellant had previously testified that he had had no communication with his wife, and had given her no directions about arresting or detaining the boy, the ruling could not have been harmful.

The following question was propounded to Mrs. Golibart on her direct examination: "Now, when you released him, you say there were no marks on his wrists? A. There were no marks. He was not hurt in any way at all. I had no intention of hurting him." Upon motion the court struck out of said answer all after the word "marks." The motion was properly sustained. The portion of the answer remaining answered the question. The portion stricken out was not directly responsive.

Objection was sustained to a question to Mrs. Golibart, asking her to state who had been at the house with her during the day, from the time that Mr. Golibart went away in the morning. The question was immaterial.

The court refused to permit appellants to show that during the day of the assault, from 6:30 in the morning until the time that the appellee was discovered in her cherry tree she was alone in the house.

Objection was sustained to the following: "I will ask you how many times before the time you discovered Herbert Sullivan in the cherry tree, these trees had been robbed by boys on that date?" The court on redirect examination refused to allow appellants to show that during that same day there had been a raiding, either by these boys or some other boys, on these trees, stealing cherries. There was no error in either of these rulings.

Appellee, in rebuttal, on direct examination, was asked by appellee's counsel: "What did you say? A. I said she twisted the rope around my wrists right there, and then made a knot here, then put this hand here that way, and made a knot here." Immediately preceding this question

Golibart *v.* Sullivan.

the witness was questioned as follows: "You heard the testimony of Mr. Golibart, saying that you testified that you were tied with a rope around your coat up here [indicating]; that you testified that that is the way you were tied. Did you testify that way or did you not? A. No sir." And then followed the question and answer to which objection is made. The objection is made that the witness could not put his own interpretation on what he said or did not say. The proposition of counsel is correct, but the witness only attempted to describe the manner in which he was tied. Appellants had the privilege of cross-examination. Appellants' rights could not have been prejudiced.

The court, of its own motion, gave, as instruction number five and one-half, the following: "We have a statute in this State which provides that 'Whoever unlawfully enters upon the lands of another, and severs from the soil any product or fruit growing thereon, the property of another, of the value of ten cents or upward; upon conviction thereof shall be fined in any sum not exceeding $100, to which may be added imprisonment in the county jail for not more than six months.' As you will observe, the penalty provided by such statute is by way of fine not exceeding $100 to which may be added imprisonment in the county jail for not more than six months; and I instruct you that if the plaintiff were guilty of taking cherries from the defendant or defendants without their consent and against their will, such offense would not be a felony. It would be what is known in law as 'criminal trespass.' If the value of the cherries so taken amounted to ten cents or upwards, and would constitute a misdemeanor if it were committed by the plaintiff, the defendant Mary P. Golibart would have no right to seize and tie plaintiff, and, without any warrant or process, confine him in the house of defendants against his will, unless it was reasonably necessary to do so for the purpose of preventing such act of trespass on his part. If you find from the evidence that the

plaintiff at the time alleged was engaged in taking cherries from the tree of the defendants, without their consent, of the value of ten cents, or less, such an act would be trespass on the part of the plaintiff; and if, while he was taking such cherries, the defendant Mary P. Golibart discovered him, she would have the right to prevent such an act of trespass on the plaintiff's part, using such force as was reasonably necessary for that purpose. But if she used an excessive force to prevent such trespass, then she would be liable in damages for such excessive use of force, and it such act of trespass could have been prevented, or [if when she discovered the plaintiff committing such an act of trespass, he discontinued the same and attempted to flee from the premises of defendants, and it was not necessary for her to use any force to prevent the continuance of such trespass, then I instruct you that said defendant Mary P. Golibart would have no right to seize the plaintiff, and bind him with rope, and confine him in the house of defendants against his will, and if she did so she would be liable to the plaintiff]."

Appellants especially object to the part of the instruction inclosed in brackets. Counsel for appellants affirm the law to be that a private citizen, when either a misdemeanor or felony is committed in his presence, not only has the right, but it is the duty of such citizen, to capture the perpetrator, if in his power, and to hold him and to turn him over to the officers of the law; that the only obligation resting upon such citizen making such arrest is to use no unnecessary delay in turning over the prisoner to the custody of the law. The instruction, considered as a whole, correctly states the law. Upon the evidence of appellant, plaintiff was guilty only of misdemeanor.

In *Doering* v. *State,* 49 Ind. 56, 19 Am. Rep. 669, it is said that: "The law applicable to arrests by a private person is stated with great precision and clearness by Tilghman, C. J., in *Wakely* v. *Hart,* 6 Binn. 316, where,

after quoting a provision of the state constitution and commenting thereon, it is said: 'But it is nowhere said, that there shall be no arrest without warrant. To have said so would have endangered the safety of society. The felon who is seen to commit murder or robbery, must be arrested on the spot or suffered to escape. So although not seen, yet if known to have committed a felony, and pursued with or without a warrant, he may be arrested by any person. And even when there is only probable cause of suspicion, a private person may without warrant at his peril make an arrest. I say at his peril; for nothing short of proving the felony will justify the arrest. These are principles of the common law, essential to the welfare of society, and not intended to be altered or impaired by the constitution.' "

Instruction seven given by the court of its own motion was excepted to. It is as follows: "If you find for the plaintiff you will award him such damages as will fairly compensate him for any injuries or indignity he may have sustained. In awarding such damages you may consider the character of his injuries; what physical injury, if any, he sustained, and also the mental suffering, if any; also any sense of shame or humiliation he may have suffered on account of such wrongful acts, if any, that were committed against him; and award him such damages as will be a fair compensation in the premises." The objection made to this instruction is that it assumes that appellee suffered, when it is not shown by the evidence that he suffered; also that it told the jury that they might consider his sense of shame or humiliation, without confining it to the acts of Mary P. Golibart. The award of damages is limited to any injury he may have sustained. This is a conditional statement, it is not an assumption. The jury, as persons of average intelligence, must have understood that the court limited their consideration to the acts of the appellants, or either of them, and to which the evidence related.

Appellants, in their first instruction requested, asked the

court to direct the jury to return a verdict in favor of defendants. In the second they asked the court to direct the jury to return a verdict in favor of Francis L. Golibart. The third instruction requested was as follows: "In this case the defendants, being husband and wife, are sued jointly; and as the evidence shows beyond question that the defendant Francis L. Golibart, the husband, did not give his permission or consent that the defendant Mary P. Golibart should commit the alleged torts complained of in plaintiff's complaint, and was not present when said alleged torts were committed by the defendant Mary P. Golibart, if they were committed, your finding therefore should be in favor of the defendants." Each of these instructions was refused, and exception taken.

In this connection it is proper to state that there is evidence that on the day on which the occurrence in question took place, a number of school children had attended a musical entertainment at public school No. 45. These children, of whom appellee was one, were nearly all regular attendants at other schools within the city. After the adjournment of the entertainment the children left the No. 45 school, being between the hours of three and four o'clock in the afternoon on the day in question, and started for their respective homes. Several of them, amongst whom was the appellee, went southward in Park avenue, and finally reached the home of appellants. Upon arriving there the boys got the impression that the house was vacant and unoccupied, there being no blinds at the windows, or any other evidence of occupation in the front part of the house, that being the only part where the children could see from the Park avenue front of the property. They noticed some cherry trees loaded with cherries in the yard where appellants' house stood, and several of them went into the yard to get some of the cherries. There is evidence that the appellee did not go into the yard, but probably went fifty feet east on Twenty-first street, until he came to a place on

the public sidewalk running south of appellants' grounds and opposite appellants' gate. While standing there appellee noticed blinds at the south windows, toward the rear portion of appellants' house, and had, as a result of that evidence just come to the conclusion that the house was occupied when the appellant Mary P. Golibart came out of a lattice door near the rear part of appellants' house. The boys who were on the inside of appellants' yard at the time, and some of them in one of appellants' cherry trees, as soon as they saw her, ran away. The appellee, who testified that he had not taken any cherries, did not run, but stood outside the gate and saw the other boys run away. While appellee was standing there, appellant Mary P. Golibart came out to the sidewalk, carried him bodily into appellants' house, and there tied his hands together tightly, and his feet together tightly, with a clothesline, and placed him in a dark room in the house, and kept him there, thus tied and a prisoner, until the appellee's mother came to his (appellee's) rescue. About an hour before the appellee was untied and released, the other appellant, Francis L. Golibart, came into appellants' house, was thereupon shown the appellee, in the condition in which the appellee then was, by his co-appellant in the case at bar, who told him, "This [pointing to appellee] is the boy who has been stealing cherries;" whereupon he (the appellant Francis L. Golibart) said, "All right," and walked out of the house, and was not seen any more by the appellee until after his (the appellee's) release.

There is evidence that appellee was never in appellants' yard or on appellants' premises until after the appellant Mary P. Golibart forcibly and without his consent carried him into appellants' house. The next day the appellant Mary P. Golibart, before a justice of the peace in the city of Indianapolis, was charged with having on the 7th day of June, 1900, committed an assault and battery upon the appellee in this case, to which charge she pleaded guilty, was fined by the justice of the peace, and payed or stayed

her fine and costs. The appellee's legs and arms were bruised and injured severely at the time by reason of being tied as aforesaid with the clothesline, and his nervous system shocked and injured.

In view of the evidence the court could not have given said instruction without invading the province of the jury. The evidence as to portions of the foregoing statement is conflicting, but it was for the jury to determine the credibility of the witnesses, and to pass upon the conflict. Appellant Francis L. knew for about an hour before the release of appellee that appellee was in his (appellant's) home, tied, and held as a person accused of stealing cherries; it was for the jury to determine from his conduct, and the expression "all right," he used in reference to the condition of appellee, at his home, whether he approved of the conduct of appellant Mary P., and consented to appellee's further confinement. See *Little* v. *Tingle,* 26 Ind. 168.

The substance of instruction five requested by appellants, and refused, is covered by instruction number four given by the court of its own motion. The instruction given is not discussed.

Instructions six and eight requested by appellants, and refused by the court, so far as they correctly state the law, were substantially given in other instructions.

It is also insisted that the damages assessed are too large. Plaintiff was entitled to damages for physical and mental pain, including humiliation, if any, caused by the injury. There is nothing in the evidence to induce the belief that the jury acted from prejudice, partiality, or corruption. This court would not therefore be justified in disturbing the judgment. *Lauter* v. *Duckworth,* 19 Ind. App. 535.

There is no error for which the judgment should be reversed. Judgment affirmed.