Laura BOWLING, Jesse Bowling, Jr.
and Jesse Bowling, Sr.,
Plaintiffs–Appellants,

v.

Mark POPP, Raymond Popp, Julie Missi, Eddie Kirchgessner, Billie Kirchgessner, Mary Lou Taylor, James Popp, Juanita Popp, Edward Missi, Jr., and Janet L. Missi, Defendants–Appellees.

No. 22A01–8807–CV–207.

Court of Appeals of Indiana,
First District.

April 3, 1989.

Nicholas F. Stein, Ward, Bolin & Stein, New Albany, William M. Clary, Jr., Clary, Guilfoyle, Thomas & Wilder, Jeffersonville, for plaintiffs-appellants.

Richard E. Aikman, Jr., Stephen J. Peters, Stewart & Irwin, Indianapolis, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellants, Laura Bowling, Jesse Bowling, Jr., and Jesse Bowling, Sr. (the Bowlings), appeal the decision of the Floyd Circuit Court granting summary judgment in favor of defendant-appellees, Edward Missi, Jr. (Edward), Janet L. Missi (Janet), and Julie Missi (Julie), in the Bowlings' action for personal injuries.

We affirm.

## STATEMENT OF THE FACTS

On the evening of September 5, 1981, a party occurred at Edward & Janet's home, apparently hosted by their children, Julie, age 19, and Tony, age 18. Although the record does not disclose the ages of all of the 30 to 50 people at the party, it appears that those in attendance were both over and under 21 years of age. Beer was present in a keg as well as in cans. Julie and Tony denied furnishing any of the beer and there is no evidence as to who bought it or where it came from. There was evidence that parties frequently occurred and that the participants in such a gathering brought their own beer. This party had not been formally planned and there had been no invitations but word of its existence was circulated by word of mouth. Edward knew of the existence of the party but had not received a request of either Julie or Tony to buy beer. Janet knew nothing of the party. Neither Edward nor Janet planned the party and the party had not yet begun by the time they departed around 5:00 to 6:00 p.m. They were not present while the party was in progress until they returned home sometime between 12:00 to 1:00 a.m. Neither Edward nor Janet condoned underage drinking and had not authorized the party. They were not teetotalers, however, and from time to time had kept intoxicants in their home which were used and served to adult guests.

Michael Alan Popp (Alan), age 20, had two or three beers at the home of a friend at about 2:00 p.m. that day. He left home that evening at about 7:00 p.m. taking with him for his own use a 12–pack of beer and a fifth of champagne which his adult sister, Mary Lou Taylor, had bought for him. No beginner at drinking, he had imbibed since he was 16 or 17 and had once been convicted of driving while intoxicated. He went uninvited to the home of a family named Kirchgessner, also defendants herein, for the stated purpose of seeing two friends who were attending a cookout there which had started in the afternoon and was still in progress. He knew few at this party and was a close friend to none. There were an estimated 40 to 50 people at the party both over and under 21. Although uninvited, Alan helped himself to two or three beers from a keg which was present and drank from his own stock which he had

in his possession. Hearing of the Missi party from his distant counsin, Mark Popp, he went uninvited to it at about 8:30 p.m. and stayed until about 11:00 p.m. He knew few people there and was not a close friend to more than two or three. While there, he helped himself to three or four beers from the keg and again drank from his own stock.

At approximately 11:00 p.m. he, Mark Popp, and another, returned to the Kirchgessner party which was winding down by that time. There was testimony that Alan was so intoxicated then that when he arrived he rolled out of the car on the passenger side clutching the champagne bottle in his hand. The witness was of the opinion someone else was driving, although Alan testified he was driving. As he staggered over to a volleyball game, he had to hang on to a clothesline to keep from falling. He stayed there a while, finished his champagne, and then returned to the Missi party where he arrived at approximately 1:00 a.m. By that time, only five or six people remained at the Missi party. The keg was empty but Alan continued to drink his own beer.

At or near this time Edward and Janet had returned home and were aggravated at seeing the party. They did not talk to the remaining people and upon Edward instructing Janet to tell them to go home, they went into the house. Edward saw Alan but Janet did not. Alan was just standing on the sidewalk and Edward noted nothing about him to be alarmed about. They saw no beer keg or other evidence of drinking. They then went to bed.

Later, Julie asked Janet to fix Alan a bed because he was too drunk to drive. She did and went back to bed. Julie and Debby Purlee, an invited guest, tried to control Alan and get him to stay but failed. As he drove off, Debby followed him to see that he got home safely. He drove across the centerline, however, striking the Bowlings' car and causing the injuries complained of. Alan's blood alcohol content measured .39%.

There was no evidence whatsoever that Edward or Janet furnished any intoxicants to Alan or even knew that anyone else did. There was no evidence that they knew of the presence of beer at their home until later. There was no evidence that Julie furnished any intoxicants to Alan, or that she and Tony even knew who bought the beer or where it came from.

The Bowlings brought suit against Mark Popp, Raymond Popp, Eddie Kirchgessner, Billie Kirchgessner, Mary Lou Taylor, James Popp, Juanita Popp, Julie Missi, Edward Missi, Jr., and Janet Missi for personal injuries. Their theory of recovery was based upon a violation of IND.CODE 7.1–5–7–8 which proscribes furnishing intoxicants to minors. They claim that a cause of action exists in favor of a person who is injured as a result of such violation against the person furnishing the intoxicants. The trial court entered summary judgment against the Bowlings and in favor of Edward, Janet, and Julie. The ruling on that motion is the subject of this appeal.

## ISSUES

The Bowlings present two issues for our review:

    I.  Whether there was sufficient evidence before the trial court to create a genuine issue of material fact as to whether the Missis furnished intoxicants to Alan.

   II.  Whether there was a genuine issue of material fact as to whether the Missis were negligent in the supervision of the party and negligent in their failure to control Alan after he became intoxicated.

## DISCUSSION AND DECISION

*Standard of Review*

Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, admissions and affidavits filed pursuant to Ind. Rules of Procedure, Trial Rule 5(D), together with any testimony, reveal that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. *Anderson v. State Farm Mutual Automobile Ins. Co.* (1984), Ind.

App., 471 N.E.2d 1170; Ind. Rules of Procedure, Trial Rule 56(C). When reviewing the grant or denial of a summary judgment motion this court stands in the shoes of the trial court. *Mead Johnson and Co. v. Oppenheimer* (1984), Ind.App., 458 N.E.2d 668. We must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677, *trans. denied.* In doing so we liberally construe all the evidence in favor of the opposing party and resolve any doubt as to the existence of a genuine issue of material fact against the moving party. *Penwell v. Western & Southern Life Ins. Co.* (1985), Ind.App., 474 N.E.2d 1042.

ISSUE I: *Genuine Issue of Material Fact*

■ IND.CODE 7.1–5–7–8 provides:
(a) It is a Class C misdemeanor for a person to sell, barter, exchange, or provide or furnish an alcoholic beverage to a minor.

Violation of this statute is negligence, and civil liability can attach to a violator where a third person is injured as a proximate cause thereof. *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847; *Brattain v. Herron* (1974), 159 Ind.App. 663, 309 N.E.2d 150. No distinction is made between a social provider and a vendor. *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167; *Brattain, supra.* The fact of furnishing and knowledge can be proven by circumstantial evidence. *Ashlock, supra; Elsperman v. Plump* (1983), Ind.App., 446 N.E.2d 1027.

■ A common law right of action involving liquor exists only in the absence of a special statutory provision. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73; *Elder, supra.*

■ IND. CODE 7.1–5–7–8 forbids a person from knowingly furnishing a minor with intoxicants. *Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755. Contributing money to a common fund to buy liquor for minors who will possess and consume it jointly does not constitute furnishing intoxicants within the meaning of the statute. *Id.*

■ The argument made here is purely factual. Our examination of the numerous depositions and other parts of the record which support and oppose the motion for summary judgment discloses no evidence that Edward, Janet, or Julie furnished Alan intoxicants. There is no evidence that Edward or Janet knew of the events at their home, and no evidence that they participated in any way in furnishing intoxicants to Alan, There is no evidence that Julie furnished beer to Alan. None of the Missis had invited him but he came and helped himself to beer brought by someone other than the Missis.

The Bowlings seem to rely on the mere presence of the beer and the fact that Julie and Tony hosted a party as establishing sufficient circumstantial evidence that the Missis furnished intoxicants to Alan. Thirty to 50 persons attended the party. Some of the people were over 21 years of age, but we do not know how many. No one offered Alan beer; he helped himself. There is no evidence of who brought the beer and under the custom sometimes followed and followed by Alan here, participants brought their own beer. Any one of the 50 people could have brought the beer. Beer brought, possessed, and consumed by people over 21 years old is not illegal. The Bowlings insistence that the Missis must have supplied it is purely speculation.

We note that as stated in *Lather,* even if the underage participants engaged in a common scheme and drank from a common bottle, it would not constitute furnishing.

ISSUE II: *Negligent Supervision and Control*

■ The Bowlings claim that a cause of action exists because Edward, Janet, and Julie failed to supervise what they characterize as a teen drinking party.

The responsibility of a private citizen to control the conduct of another was discussed at length in *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092; *Lather, supra; Campbell v. Board of Trustees of Wabash College* (1986), Ind.App., 495 N.E.2d 227; *Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534, *trans. denied.* In *Gilbert* the

plaintiff was denied recovery from a race track where an intoxicated stranger drove into its parking lot and was permitted by security guards to leave after which he injured the plaintiff on the highway with his automobile. In *Campbell* recovery was denied the plaintiff in her suit against the college where a member of a fraternity became intoxicated in his room and later caused injury to the plaintiff, his passenger, while driving his automobile. In *Lather* one of three teen boys who had been drinking together from a common bottle caused the death of a policeman while driving while intoxicated. In a suit against the other two boys, recovery was denied. *Martin* involved an injury of one social guest at the hands of another guest who pushed him into a swimming pool at a pool party. In a suit against the host, recovery was denied.

The *Campbell* case, referring to *Gilbert*, stated:

When addressing the duty to control the conduct of others, the courts of Indiana generally follow the principles set forth in the Restatement (Second) of the Law on Torts. *See, e.g., Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534. The basic principle of this duty is stated as follows:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

RESTATEMENT OF THE LAW ON TORTS Sec. 315 (2d ed. 1965).

The specific duties which make up the basic principle are:

(1) The duty of a parent to control the conduct of his child (*Id.*, Sec. 316);

(2) The duty of a "master" to control the conduct of his "servants" (*Id.*, Sec. 317);

(3) The duty of a possessor of land or chattels to control the conduct of his licensee (*Id.*, Sec. 318);

(4) The duty of those in charge of persons having dangerous propensities to control such persons (*Id.*, Sec. 319); and

(5) The duty of those having custody of another to control the conduct of others (*Id.*, Sec. 320).

495 N.E.2d at 231–32.

After reviewing the authorities, we stated in *Gilbert:*

In all of the cases imposing liability for the failure to control the conduct of a third party, there are similar factors supporting the imposition of a duty. There is a person in need of special supervision or protection (i.e., child, drunkard, business invitee) from someone who is in a superior position to provide it (parent, supplier of alcohol, business owner, hospital). This dependency is part of the special relationship described by the Restatement (Second) of Torts § 315 (1965). The other part of this special relationship is the right to intervene or control the actions of a third person. We know of no case from any jurisdiction which imposes a duty to control a third person when no right to control exists. The right to control another person's actions is essential to the imposition of this duty. If Sports had no right to control Riggs, its conduct cannot constitute negligence.

Sports argues that it had no right to detain or control Riggs because such control would constitute an arrest. A private entity may only arrest someone if a felony has in fact been committed, and there are reasonable grounds to suspect the individual it arrests. *Smith v. State,* (1972) 258 Ind. 594, 283 N.E.2d 365, 367; *Golibart v. Sullivan,* (1903) 30 Ind.App. 428, 66 N.E. 188. When a private citizen makes an arrest he does so at his own peril. *Knotts v. State,* (1963) 243 Ind. 501, 187 N.E.2d 571; *Golibart, supra.* The use of force in a "citizen's arrest" is governed by statute:

"A person other than a law enforcement officer is justified in using rea-

sonable force against another person to effect his arrest or prevent his escape if:

(1) a felony has been committed; and

(2) there is probable cause to believe the other person committed that felony.

However such person is not justified in using deadly force unless that force is justified under section 2 of this chapter."

IND. CODE 35–41–3–3(a) (Supp.1981). Public Intoxication is a Class B Misdemeanor. IND.CODE 7.1–5–1–3 (Supp. 1981).

    \*    \*    \*    \*    \*    \*

Clearly, when Riggs was in the speedway parking lot he could only have been arrested for a misdemeanor. A private citizen making such an arrest would be liable for false imprisonment. *Knotts, supra; Golibart, supra.* Therefore, there was no duty to make a "citizen's arrest."

431 N.E.2d at 538–39. *Martin* and *Lather* followed those cases, and reached the same result.

Here Alan, a 20 year old person who held a job and had a history of drinking, appeared uninvited by the Missis after having indulged considerably in intoxicants. He helped himself to more from a keg that, as far as the evidence shows, existed on the premises. Attempts were made to persuade him to stay and not drive but he was obdurate. The Missis had no right to arrest him. It is not suggested what means the Missis may have employed to control him. We therefore hold, in accordance with the above authorities, that no duty arose on the part of the Missis to supervise or control Alan. The trial court was correct in granting summary judgment.

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, C.J., concurs.

SULLIVAN, J., concurs in result.