Vontris Gay **KINSEY**, Appellant–
Plaintiff,

v.

Linda Kay **BRAY** and Rex Kinsey,
Appellees–Defendants.

No. 03A01–9110–CV–301.

Court of Appeals of Indiana,
First District.

July 27, 1992.

Rehearing Denied Aug. 17, 1992.

Transfer Denied Oct. 26, 1992.

Richard R. Donnelly, Columbus, for appellant-plaintiff.

John A. Stroh, Sharpnack, Bigley, David & Rumple, Karon E. Perkins–Smith, Columbus, for appellees-defendants.

ROBERTSON, Judge.

Vontris Gay Kinsey appeals from the grant of summary judgment in favor of her former husband, Rex Kinsey, in her suit which alleges he did not warn her of threats and did not protect her from harm from his girlfriend, Linda Kay Bray. On appeal, Vontris claims summary judgment was inappropriate because she was an invitee in Rex's residence and Rex owed her a duty to exercise reasonable care for her protection. She claims a genuine issue of material fact exists about whether Rex fulfilled that duty. We reverse.

The evidence most favorable to nonmovant Vontris reveals that she and Rex were in his residence when Linda arrived. Linda was upset and loud. She banged doors, broke a window, and threatened Vontris. Rex knew Linda had previously threatened Vontris with physical harm if she ever found Vontris present at Rex's residence. Linda had also been physically violent with Rex in the past. Rex had nevertheless invited both Vontris and Linda to his residence on the date in question. He did not, however, warn Vontris about Linda's previous threats. He also did not attempt to remove Linda or protect Vontris when Linda arrived. However, Rex had previously asked Linda not to physically confront Vontris because she had been in an automobile accident which had possibly left her more vulnerable to serious injury. Nevertheless, Linda attacked Vontris and caused her physical injury.

When this Court reviews a grant of summary judgment, it applies the same standard as that employed by the trial court. *Robinson v. Kinnick* (1989), Ind.App., 548 N.E.2d 1167, 1168, *trans. denied.* Summary judgment may be granted only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Ind.Trial Rule 56(C). This Court will reverse only if the record discloses an unresolved issue of fact or an incorrect application of the law to undisputed facts. *Robinson*, 548 N.E.2d at 1168.

Indiana courts have traditionally recognized that the existence of a common law negligence action requires judicial determination of a duty on the part of the defendant in relation to the plaintiff. *Gariup Construction Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224 (quoting *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701). The question of whether a duty to exercise care arises is governed by the relationship of the parties and is an issue

of law within the province of the court. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 369.

■ This initial question, whether the law will recognize a duty, is answered by a balance of three factors: the relationship between the parties, the reasonable foreseeability of harm to the person injured, and the concerns of public policy. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. The relationship here is one between a possessor of land and social guests or invitees. As recently noted by this court, Indiana courts generally follow the principles set forth in the Restatement (Second) Torts Sec. 315 (1965):

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Bowling v. Popp* (1989), Ind.App., 536 N.E.2d 511, 515 (citing *Campbell v. Board of Trustees of Wabash College* (1986), Ind. App., 495 N.E.2d 227, *trans. denied* ). We must, therefore, examine the relations between Rex and Linda to determine whether the law will recognize a duty and require Rex to control Linda's conduct and also examine the relations between Rex and Vontris to determine whether the law will recognize a duty and require Rex to control Linda's conduct for Vontris' protection.

According to Comment (c) of Restatement (Second) Torts Sec. 315, one relation between the actor and a third person which requires the actor to control the third person's conduct is that of the duty of a possessor of land or chattels to control the conduct of his licensee, as provided in Restatement (Second) Torts Sec. 318 (1965). *See Pursley for Benefit of Clark v. Ford Motor* (1984), Ind.App., 462 N.E.2d 247, 250. Section 318 states:

If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person so as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Our supreme court has cited this section as generally helpful. *Gariup,* 519 N.E.2d at 1229.

■ Under the facts most favorable to the nonmovant, the law will recognize a duty and require Rex to control Linda's conduct. The relations between Rex and Linda were that of possessor of land and third person allowed to use the land, in that Rex invited Linda into the comfort and protection of his home. The trier of fact could conclude that Rex knew or had reason to know he could have controlled Linda, in that he could have ordered her to leave the premises. The trier of fact could also conclude that he knew or should have known he should take such action because of Linda's past threats and animosity aimed at Vontris and because of her past acts of violence. Also, this Section may apply here even though Indiana now identifies a social guest as an invitee rather than a licensee. *See Burrell v. Meads* (1991), Ind., 569 N.E.2d 637. This Section of the Restatement is not rendered inapplicable merely because Linda may now be identified as an invitee when formerly she would have been identified, as mentioned in the title to this Section, as a licensee. Regardless of status, the special relationship is, in reality, the same: that of possessor of land and social guest. The law recognizes a duty under the facts most favorable to Vontris; and the trier of fact could find, under the facts of this case, that Rex was bound by such a duty.

Further, one relation between the actor and the other, which requires the actor to

control the conduct of a third person for the protection of the other, is the special relation giving rise to a duty to aid or protect under Restatement (Second) Torts Sec. 314A. *See* Comment (c) to Restatement (Second) Torts Sec. 315. *See generally, Stephenson v. Ledbetter* (1991), Ind. App., 575 N.E.2d 1035, 1038 (court not bound by a Pennsylvania decision, which relied, in part, upon Section 314A to conclude that no special relationship existed, because, in Indiana, a driver has a duty to use reasonable care for the safety of passengers). For example, an innkeeper owes a duty to its guests to protect them against unreasonable risk of physical harm. Restatement (Second) Torts Sec. 314A(2). The same is true of the possessor of land who holds it open to the public. Restatement (Second) Torts Sec. 314A(3). The relations listed in this Section, however, are not intended to be exclusive and are not necessarily the only ones in which a duty of affirmative actions for the aid or protection of another may be found. *Id.* (Comment b).

The duty to protect the other against unreasonable risk of harm extends to risks arising out of the condition of the actor's land or chattels. *Id.* (Comment d). In *Burrell,* 569 N.E.2d 637, our supreme court turned "to the question whether social guests like Burrell should be added as a third type of invitee (in addition to the two categories recognized under Sec. 332)." *Id.* at 642–643. Section 332 defines persons who qualify as invitees as either public invitees or business visitors. The court concluded that a landowner should also exercise reasonable care for social guests, just as the landowner should for a business visitor. Inasmuch as the standard of care given the public invitee, the business invitee (visitor), and the social invitee (guest) is the same, we conclude that the law will recognize a duty on the part of a possessor of land to protect social invitees against unreasonable risk of physical harm from third persons. Also, the trier of fact could find, under the facts of this case, that Rex was bound by such a duty to Vontris.

Further, a similar relation between the actor and the other, which requires the actor to control the conduct of a third person for the protection of the other, is the duty on the part of a landowner to exercise reasonable care for the safety of social guests who come to the premises upon actual invitation or upon standing invitation. *See Burrell,* 569 N.E.2d at 643. Restatement (Second) of Torts Sec. 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

*Id.* at 639–640, 643.

A question arises, however, about whether a third person's presence or conduct may constitute a "condition on the land" of the landowner, within this section of the Restatement, which the possessor of the land must control for others' protection. In *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092, the action was governed by the general principles of premises liability even though it was alleged to have involved an activity, that is, horseplay near a swimming pool, which was performed by third persons and which caused the plaintiff injury. Under the law at that time, the plaintiff, a social guest, was a licensee for whom negligence was not sufficient to impose liability upon the landowner. Now, of course, a social guest is an invitee for whose safety the landowner must exercise reasonable care. *Burrell,* 569 N.E.2d 637. In fact, the duty an owner owes to a business invitee is the same as that the owner owes to a social invitee: to exercise reasonable care under the circumstances. In *Martin,* 463 N.E.2d 1092, our supreme court approved of and adopted Judge Neal's dissenting opinion as its own:

*Glen Park Democratic Club, Inc. v. Kylsa,* (1966) 139 Ind.App. 393, 213 N.E.2d 812, involved a tavern owner's duty to control invitees and protect them from each other. The plaintiff was injured by another patron who allegedly was known by the defendant to be violent; there was no alleged defect or dangerous condition in the premises themselves. Nevertheless, the case was decided within the framework of general premises liability law.

*Id.* at 1095. In *Glen Park,* the plaintiff had alleged that the defendant had failed to eject the third party patrons from the premises and had failed to protect the plaintiff from their unprovoked assault. *Glen Park Democratic Club, Inc. v. Kylsa* (1966), 139 Ind.App. 393, 395, 213 N.E.2d 812, 814. The court there stated:

> Although we have no knowledge of a decision in Indiana involving these facts, the law set forth in those jurisdictions having passed upon similar facts appears to be the same as our general law on negligence as it applies to licensees by invitation or, as sometimes called, business invitees.
>
> The record is replete with sufficient evidence showing or from which the jury could reasonably infer, that appellee was on the premises of appellant-Glen Park as a business invitee; that appellant-Kornafel was in charge of said premises on behalf of said corporation; that appellee was assaulted by other patrons on the premises, and thereby was injured; that appellant-Kornafel knew of prior threats by such patrons to injure appellee, either by directly being told by appellee or witnessing the same; and that appellant-Kornafel knew, by witnessing the assault upon appellee, that it was taking place. We are not here concerned, on appeal, with the fact that appellants' theory and evidence as to how appellee received his injuries are in direct conflict with appellee's theory and evidence.
>
> A review of the evidence most favorable to appellee readily shows, in our opinion that there is evidence to support the verdict of the jury, the action of the trial court in overruling appellants' mo-

tions for directed verdicts and refusing the instructions tendered therewith, and that the verdict is not contrary to law.

> In our opinion there was ample evidence of probative value as to each material element to support the verdict and we cannot say, as a matter of law, that reasonable men could not have arrived at the conclusion reached by the jury.

*Id.* at 396–397, 213 N.E.2d at 814–815. *See also,* Restatement (Second) Torts Sec. 344 (Business Premises Open to Public: Acts of Third Persons or Animals).

Indiana courts have stated that, with regard to a duty to intervene or control the actions of a third person, a right to control must exist. *Bowling,* 536 N.E.2d at 515 (quoting *Sports, Inc. v. Gilbert* (1982), Ind. App., 431 N.E.2d 534, *trans. denied* ). Vontris correctly contends that, as the possessor of the land in the present case, Rex had the right to eject Linda from his premises, as was the case in *Glen Park,* 139 Ind.App. 393, 213 N.E.2d 812. Although he might not have been able to force Linda to stay on the premises, he could have ordered her to leave. Also, as noted, in *Martin,* 463 N.E.2d 1092, our supreme court approved of and adopted Judge Neal's dissenting opinion, which states:

> Any duty to control the conduct of another must be grounded in the right to control him. *See Sports, Inc. v. Gilbert,* Ind.App. 431 N.E.2d 543 (1982). Any right on the part of Mr. Shea to control his guest is derived from his right to control the property. It is anomalous to hold premises liability law inapplicable to a theory of liability intrinsically related to the control of land.

*Id.* at 1094.

In any event, the law will recognize a duty under these facts because of Rex's relations to either Vontris or Linda, or to both of them. *See also,* Restatement (Second) Torts Sec. 302B (Risk of intentional or criminal conduct) (cited in *Ember v. B.F.D. Inc.* (1986), Ind.App., 490 N.E.2d 764, *denial of rehearing* (1988), 521 N.E.2d 981, *trans. denied*); *Id.* at Comment e.B. (special relation exists between a possessor of land and an invitee); *Id.* at Comment e.D.

(special relation exists where the actor has brought the third person into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct); Restatement (Second) Torts Sec. 303 (Acts intended or likely so to affect the conduct of the other, a third person, or an animal as to involve unreasonable risk); *Id.* at Comment d. (even when the actor does not intend to cause the particular conduct but creates a situation in which the harmful conduct is likely to occur).

To determine whether Linda's actions were reasonably foreseeable, we focus on whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. *Webb,* 575 N.E.2d at 997. The evidence most favorable to the nonmovant shows that Linda had made threats against Vontris' person in Rex's presence. Linda had said she would "beat her ass if she ever got the chance." When she confronted Vontris at Rex's home, Linda reminded Rex that she had told him she would physically harm Vontris if she ever found Vontris there. Linda had also been physically violent with Rex in the past. While the evidence presented thus far does not show that Linda had been physically violent with Vontris in the past, Rex, in fact, had asked Linda not to physically confront Vontris because an automobile accident had possibly rendered her more susceptible to harm. If Vontris' version of the events is believed, then Rex apparently actually foresaw the harm eventually inflicted. Here, Vontris, the person actually harmed, was a reasonably foreseeable victim and the physical injury by Linda, the type of harm actually inflicted, was reasonably foreseeable. The trier of fact could conclude that the presence of Vontris and Linda in Rex's home, by his actual or standing invitation, presented Linda with an enticing opportunity to carry out her threat and that Rex knew or should have known this. In light of the foregoing, we conclude that the law will recognize the foreseeability of harm.

Public policy concerns which favor the imposition of a duty include the willingness to hold a possessor of land liable because he ordinarily is in the best position to discover dangers associated with his property and often is responsible for creating them. See Prosser and Keeton on Torts Sec. 57 at 386 (5th ed. 1984). We perceive no great hindrance to the imposition of a duty on Rex in this case based upon public policy concerns. The evidence most favorable to the nonmovant shows that Rex invited Linda and Vontris to his premises despite Linda's past violent tendencies and her past threats to harm Vontris. We have already noted that Linda's attack on Vontris could be found reasonably foreseeable to Rex. The burden on Rex, to warn Vontris or to order Linda from his premises for example, was relatively slight when compared with the foreseeable risk of bodily harm to Vontris from Linda.

> No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.

*Gariup,* 519 N.E.2d at 1227 (quoting Prosser & Keeton on Torts Sec. 53 (5th ed. 1984)). Reasonable persons would recognize the duty described here and agree that it exists under the facts most favorable to Vontris.

■ While this Court's province is to determine whether the special relationship gives rise to a duty, factual questions may be interwoven with the determination of the existence of a relationship, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the finder of fact. *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258, 1261–1262, *trans. denied* (citing *Clyde E. Williams & Associates, Inc. v. Boatman* (1978), 176 Ind.App. 430, 375 N.E.2d 1138, *trans. denied* ). Such implicit factual questions may require jury involvement. *Douglass,* 549 N.E.2d at 369, n. 1 (quoting *Williams,* 176 Ind.App. 430, 375 N.E.2d 1138).

In our review of the grant of summary judgment, any doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448. We only state that, under the facts most favorable to Vontris, the law will recognize a duty. To the contrary, Rex claims Linda was a trespasser who broke into his home without permission and he therefore could not have known about her or discovered her with reasonable care. He also claims he therefore could not have foreseen her presence, the necessity to exercise control, or the harm she inflicted. Whether, under the circumstances, Linda was a trespasser whose actions could not have been foreseen or was a social invitee whose actions could have been foreseen are implicit factual questions which require jury involvement.

If a duty of care exists, the determination of whether a breach of duty occurred is a factual question which requires an evaluation of the landowner's conduct with respect to the requisite standard of care. *Douglass*, 549 N.E.2d at 370.

> If the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury; but if the facts are not in dispute, or if the facts most favorable to the proponent, together with all reasonable and logical inferences that may be drawn therefrom be assumed as true, and reasonable men could draw only one inference from such assumed facts and inferences, then the question of negligence becomes one of law for the court.

*Lincoln Operating Co. v. Gillis* (1953), 232 Ind. 551, 556, 114 N.E.2d 873, 875 (quoting *Gamble v. Lewis* (1949), 227 Ind. 455, 85 N.E.2d 629) (citations and footnote omitted).

The implicit factual questions about the extent of the duty owed, whether a breach of such duty occurred, and whether this proximately caused Vontris' injuries, are for the trier of fact. *See Jump v. Bank of Versailles* (1992), Ind.App., 586 N.E.2d 873, 876. The trial court therefore improperly granted summary judgment.

■ Finally, Rex offers bits of facts in his favor which he claims show a history of animosity between Linda and Vontris. He contends this history of animosity shows that Vontris cannot fulfill the requirement of Restatement (Second) of Torts Sec. 343(b), in that she cannot show that Rex should have expected that she "will not discover or realize the danger or will fail to protect" herself against it. However, the plaintiff's knowledge of the threats in *Glen Park*, 139 Ind.App. 393, 213 N.E.2d 812, did not prevent the jury from rendering a verdict in his favor. *Glen Park*, 139 Ind.App. at 396, 213 N.E.2d at 814–815 (evidence showed appellant knew of prior threats either by *directly being told by appellee* or by witnessing the same). In spite of evidence to the contrary, Vontris has produced evidence which, if believed by the trier of fact, shows Rex did not tell her of Linda's threats of bodily harm and did not tell her he had invited Linda to his residence when Vontris was also to be present. The trier of fact could find, in light of his silence on these matters and in light of Linda's violent tendencies, that Rex should have expected that Vontris would not discover or realize the danger posed by Linda's appearance.

Rex also offers several other allegations on appeal that he did not raise in the trial court. We consider them waived. As for his other arguments about the facts of the case, Rex should address them to the trier of fact.

## CONCLUSION

We cannot say, as a matter of law, that Rex was entitled to summary judgment, as genuine issues of material fact still exist in this case. A possessor of land must exercise reasonable care for the protection of social guests or invitees from acts of third parties which are reasonably foreseeable. The trier of fact could conclude, under these facts, that Rex had notice of and an opportunity to prevent the alleged assault. The trier of fact should be allowed to de-

cide if Rex exercised reasonable care under the circumstances.

Judgment reversed.

BUCHANAN, J., concurs.

RATLIFF, C.J., concurs in result.